ACCEPTED
01-15-00117-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:54:34 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00117-CV

# In the Court of Appeals
# for the First District of Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/7/2015 3:54:34 PM
CHRISTOPHER A. PRINE
Clerk

**LEAGUE CITY,**
*Appellant/Cross-Appellee,*

**v.**

**TEXAS WINDSTORM INSURANCE ASSOCIATION,**
*Appellee/Cross-Appellant.*

## BRIEF OF APPELLANT LEAGUE CITY

Gregory F. Cox
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
409.832.2777–telephone
409.832.2703–facsimile

Rene M. Sigman
THE MOSTYN LAW FIRM
3810 W. Alabama
Houston, Texas 77027
713.861.6616–telephone
713.861.8084–facsimile

Jennifer Bruch Hogan
Richard P. Hogan, Jr.
James C. Marrow
HOGAN & HOGAN
Pennzoil Place
711 Louisiana, Suite 500
Houston, Texas 77002-2721
713.222.8800–telephone
713.222.8810–facsimile

Randal Cashiola
CASHIOLA & BEAN
2090 Broadway Street, Suite A
Beaumont, Texas 77701
409.813.1443–telephone
409.813.1467–facsimile

Attorneys for Appellant League City

**Oral Argument Requested**                                    **August 7, 2015**

47367_1

## IDENTITY OF PARTIES AND COUNSEL

Plaintiff/Appellant/Cross-Appellee is League City.

Appellant's counsel at trial and on appeal are:

Gregory F. Cox
gfcox@mostynlaw.com
THE MOSTYN LAW FIRM
6280 Delaware Street
Beaumont, Texas 77706
409.832.2777–telephone
409.832.2703–facsimile

Rene M. Sigman
rmsigman@mostynlaw.com
THE MOSTYN LAW FIRM
3810 W. Alabama
Houston, Texas 77027
713.861.6616–telephone
713.861.8084–facsimile

Jennifer Bruch Hogan
jhogan@hoganfirm.com
Richard P. Hogan, Jr.
rhogan@hoganfirm.com
James C. Marrow
jmarrow@hoganfirm.com
HOGAN & HOGAN
Pennzoil PLACE
711 Louisiana, Suite 500
Houston, Texas 77002-2721
713.222.8800–telephone
713.222.8810–facsimile

Randal Cashiola
rcashiola@cashiolabeanlaw.com
CASHIOLA & BEAN
2090 Broadway Street, Suite A
Beaumont, Texas 77701-1944
409.813.1443–telephone
409.813.1467–facsimile

Defendant/Appellee/Cross-Appellant is Texas Windstorm Insurance Association.

Appellee's counsel at trial and on appeal are:

Dale Wainwright
BRACEWELL & GIULIANI LLP
111 Congress Avenue Suite 2300
Austin, Texas 78701-4061
512.472.7800–telephone
800.404.3970–facsimile

Jay Old
JAY OLD & ASSOCIATES, PLLC
3560 Delaware, Suite 308
Beaumont, Texas 77706
409.241.7252–telephone
409.419.1733–facsimile

Andrew T. McKinney
Tory F. Taylor
LITCHFIELD CAVO, L.L.P.
One Riverway, Suite 1000
Houston, Texas 77056
713.418.2000–telephone
713.418.2001–facsimile

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

INDEX OF AUTHORITIES .................................................................................. vi

STATEMENT OF THE CASE ............................................................................... xiii

ISSUES PRESENTED ........................................................................................... xiv

STATEMENT OF FACTS .......................................................................................1

SUMMARY OF ARGUMENT ................................................................................6

ARGUMENT ...........................................................................................................7

I.     The Trial Court Erred in Rendering Judgment for TWIA Based on the Jury's Finding that the Appraisal Award Failed to Comply With Policy Terms and Conditions. ...................................................................7

       A.     Because the jury question was submitted improperly, a new trial is required. .........................................................................................7

       B.     If the appraisal award failed to comply with the policy terms, a new trial should be granted. .................................................................16

II.    If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Breach of Contract Claim. ...................................................19

       A.     The jury's finding that TWIA failed to comply with the insurance policy is supported by at least some evidence. ....................19

       B.     There is at least some evidence of League City's damages. ...............20

       C.     TWIA's complaint about disclosure responses does not support rendition. .................................................................................23

III.   If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Insurance Code Claim. .........................................................26

A.   The finding that TWIA violated the Insurance Code is supported by some evidence and is material. .......................................26

B.   League City's Insurance Code claims are independent of its breach of contract theory. .......................................28

1.   League City does not need a finding that TWIA failed to comply with the policy to recover under the Insurance Code. .......................................29

2.   Moreover, the jury found that League City failed to comply with the contract. .......................................31

C.   The finding of damages caused by TWIA's deceptive act is supported by some evidence and is material. .......................................32

1.   League City can recover benefit-of-the-bargain damages. ........32

2.   The evidence supports the jury's finding of damages caused by TWIA's failure to affirm or deny coverage. ............34

D.   League City is not statutorily prohibited from recovering against TWIA on its Chapter 541 claims. .......................................37

E.   League City's extra-contractual claims are not barred by limitations. .......................................42

IV.   If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Good Faith and Fair Dealing Claim. .......................................43

V.   The Jury Findings on TWIA's Alleged Defenses Do Not Support Rendition of a Take Nothing Judgment. .......................................46

A.   TWIA elected to treat the contract as continuing. .......................................47

B.   The questions on notice and receipts were improperly submitted. .......................................52

C.   League City complied with the policy's notice requirement as a matter of law, or TWIA waived the notice requirement as a matter of law. .......................................58

D.    The jury's answers to question 20 support rendition of judgment in League City's favor. .......................................... 60

VI.    If a New Trial Is Not Granted, League City Is Entitled to Recover Attorney's Fees. ....................................................................... 61

PRAYER .................................................................................................... 63

CERTIFICATE OF COMPLIANCE ........................................................ 65

CERTIFICATE OF SERVICE ................................................................. 66

APPENDIX

Charge of the Court (CR286-326) ............................................ Tab A

Order Granting Motion to Adjudge Costs (CR663) ................. Tab B

Final Judgment (CR664-66) .................................................... Tab C

Amended Final Judgment (CR678-80) .................................... Tab D

Amended Order Denying Plaintiff's Motion to Disregard Certain Jury Findings and Render Judgment on the Remaining Findings (CR856) .................................................................... Tab E

Amended Order Denying Plaintiff's Motion for New Trial (CR857) .................................................................................... Tab F

# INDEX OF AUTHORITIES

Page(s)

**Cases**

*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166 (D.C. Cir. 2003) ..............................................................35

*Alvarado v. Farah Mfg. Co.*,
830 S.W.2d 911 (Tex. 1992)...................................................................25

*AMS Constr. Co. v. K.H.K. Scaffolding Houston, Inc.*,
357 S.W.3d 30 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd)..................52

*Arnold v. Nat'l County Mut. Fire Ins. Co.*,
725 S.W.2d 165 (Tex. 1987)...................................................................44

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
945 S.W.2d 812 (Tex. 1997)........................................................... 25, 33

*Brown v. Bank of Galveston*,
963 S.W.2d 511 (Tex. 1998),
*abrogated on other grounds by*
*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007)...................................62

*Chitsey v. Nat'l Lloyds Ins. Co.*,
738 S.W.2d 641 (Tex. 1987)...................................................................44

*Cooke v. Morrison*,
404 S.W.3d 100 (Tex. App.—Houston [1st Dist.] 2013, no pet.) .......................42

*Crown Life Ins. Co. v. Casteel*,
22 S.W.3d 378 (Tex. 2000)....................................................................15

*Germania Farm Mut. Ins. Ass'n v. Williams*,
No. 11-00-00393-CV, 2002 WL 32341841 (Tex. App.—Eastland
May 23, 2002, no pet.) (not designated for publication) ......................................9

*Grady v. Home Fire & Marine Ins. Co.*,
63 A. 173 (R.I. 1906) ..........................................................................18

*Greene v. Farmers Ins. Exch.*,
446 S.W.3d 761 (Tex. 2014) ................................................................50

*Guevara v. Ferrer*,
247 S.W.3d 662 (Tex. 2007) .............................................. 23, 25, 37

*Gupta v. E. Idaho Tumor Inst., Inc.*,
140 S.W.3d 747 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ....... 50, 51

*Helena Chem. Co. v. Wilkins*,
47 S.W.3d 486 (Tex. 2001) ................................................................39

*Henry v. Masson*,
333 S.W.3d 825 (Tex. App.—Houston [1st Dist.] 2010, no pet.) .......... 47, 50, 51

*Hernandez v. Gulf Group Lloyds*,
875 S.W.2d 691 (Tex. 1994) .............................................. 50, 51

*Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc.*,
421 S.W.2d 431 (Tex. Civ. App.—Houston [1st Dist.] 1967,
writ ref'd n.r.e.) ................................................................47

*In re Allstate County Mut. Ins. Co.*,
85 S.W.3d 193 (Tex. 2002) ................................................................16

*In re Estate of Nash*,
220 S.W.3d 914 (Tex. 2007) ................................................................39

*In re Park Mem'l Condo. Ass'n, Inc.*,
322 S.W.3d 447 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) .....17

*In re S. Ins. Co.*,
No. 09-11-00022-CV, 2011 WL 846205 (Tex. App.—Beaumont
Mar. 10, 2011, orig. proceeding) (mem. op.) ................................................16

*In re Slavonic Mut. Fire Ins. Ass'n*,
308 S.W.3d 556 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) .....16

*Int'l Travelers Ass'n v. Marshall*,
131 Tex. 258, 114 S.W.2d 851 (1938) ................................................................10

*Jernigan v. Langley*,
111 S.W.3d 153 (Tex. 2003) ................................................................60

*Long Trusts v. Griffin*,
    222 S.W.3d 412 (Tex. 2006)...................................................... 47, 49, 51

*Man Indus. (India) Ltd. v. Midcontinent Express Pipeline, LLC*,
    407 S.W.3d 342 (Tex. App.—Houston [14th Dist.] 2013,
    pet. denied) ...................................................................................... 47, 50

*Mead v. Johnson Group, Inc.*,
    615 S.W.2d 685 (Tex. 1981)...................................................................58

*Mitchell v. Aetna Cas. & Sur. Co.*,
    579 F.2d 342 (5th Cir. 1978)...................................................................17

*Mustang Pipeline Co. v. Driver Pipeline Co.*,
    134 S.W.3d 195 (Tex. 2004)...................................................................58

*Mut. Life Ins. Co. of N.Y. v. Steele*,
    570 S.W.2d 213 (Tex. Civ. App.—Houston [14th Dist.] 1978,
    writ ref'd n.r.e.)....................................................................................10

*New Process Steel Corp. v. Steel Corp. of Tex., Inc.*,
    703 S.W.2d 209 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)..........35

*Oilwell Div., U.S. Steel Corp. v. Fryer*,
    493 S.W.2d 487 (Tex. 1973)...................................................................32

*Outlet Co. v. Int'l Sec. Group, Inc.*,
    693 S.W.2d 621 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ...................32

*PAJ, Inc. v. Hanover Ins. Co.*,
    243 S.W.3d 630 (Tex. 2008)...................................................................51

*Prestige Ford Garland Ltd. P'ship v. Morales*,
    336 S.W.3d 833 (Tex. App.—Dallas 2011, no pet.)...........................................43

*Progressive County Mut. Ins. Co. v. Boyd*,
    177 S.W.3d 919 (Tex. 2005)...................................................................29

*Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*,
    877 S.W.2d 872 (Tex. App.—San Antonio 1994, no writ) ...............................11

*Quantum Chem. Corp. v. Toennies*,
    47 S.W.3d 473 (Tex. 2001).................................................................. 11, 12

*Ragsdale v. Progressive Voters League*,
  801 S.W.2d 880 (Tex. 1990)................................................................62

*Republic Ins. Co. v. Stoker*,
  903 S.W.2d 338 (Tex. 1995)........................................................ 29, 30

*Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*,
  77 S.W.3d 253 (Tex. 2002)..............................................................26

*Roustan v. Sanderson*,
  No. 02-09-00377-CV, 2011 WL 4502265 (Tex. App.—Fort Worth
  Sept. 29, 2011, pet. denied) (mem. op.)............................................33

*RSUI Indem. Co. v. The Lynd Co.*,
  58 TEX. SUP. CT. J. 854, No. 13-0080, 2015 WL 2194201
  (Tex. May 8, 2015) ......................................................................7, 10

*Smith v. Patrick W.Y. Tam Trust*,
  296 S.W.3d 545 (Tex. 2009).............................................................62

*Soell v. Haddon*,
  85 Tex. 182, 19 S.W. 1087 (1892).....................................................10

*Spencer v. Eagle Star Ins. Co. of Am.*,
  876 S.W.2d 154 (Tex. 1994).......................................................... 25, 26

*Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*,
  184 S.W.3d 840 (Tex. App.—Austin 2006, pet. granted,
  judgm't vacated w.r.m.) ...................................................................45

*St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*,
  681 F. Supp. 2d 748 (E.D. La. 2010)................................................17

*State Dep't of Highways & Pub. Transp. v. Payne*,
  838 S.W.2d 235 (Tex. 1992)........................................................ 57, 58

*State Farm Life Ins. Co. v. Beaston*,
  907 S.W.2d 430 (Tex. 1995).............................................................33

*State Farm Lloyds v. Johnson*,
  290 S.W.3d 886 (Tex. 2009).................................................... passim

*State Farm Lloyds v. Page*,
  315 S.W.3d 525 (Tex. 2010)................................................................29

*State v. Shumake*,
  199 S.W.3d 279 (Tex. 2006)...............................................................38

*Stewart & Stevenson LLC v. Foret*,
  No. 01-11-01032-CV, 2013 WL 4337319 (Tex. App.—Houston [1st Dist.]
  Aug. 15, 2013, no pet.) (mem. op.).....................................................25

*Sw. Bell Tel. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991)...............................................................44

*Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*,
  843 S.W.2d 470 (Tex. 1992)........................................................ 14, 15

*Texas Comm'n on Human Rights v. Morrison*,
  381 S.W.3d 533 (Tex. 2012)...............................................................15

*TGS-NOPEC Geophysical Co. v. Combs*,
  340 S.W.3d 432 (Tex. 2011)...............................................................40

*TIG Ins. Co. v. Via Net*,
  178 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2005),
  *rev'd on other grounds*, 211 S.W.3d 310 (Tex. 2006).........................35

*Triton 88, L.P. v. Star Elec., L.L.C.*,
  411 S.W.3d 42 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ........52

*U.S. Fire Ins. Co. v. Millard*,
  847 S.W.2d 668 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding)........30

*Union Bankers Ins. Co. v. Shelton*,
  889 S.W.2d 278 (Tex. 1994)...............................................................43

*United Nat'l Ins. Co. v. AMJ Invs., LLC*,
  447 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) .... 31, 33, 34

*Vail v. Tex. Farm Bureau Mut. Ins. Co.*,
  754 S.W.2d 129 (Tex. 1988).......................................................30, 33, 44

*Viles v. Sec. Nat'l Ins. Co.*,
  788 S.W.2d 566 (Tex. 1990).......................................................31, 45

47367_1                                    x

*Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*,
   959 S.W.2d 182 (Tex. 1988)................................................................. 33, 34, 44

*Wells v. Am. States Preferred Ins. Co.*,
   919 S.W.2d 679 (Tex. App.—Dallas 1996, writ denied) ........................ 9, 11, 18

*Willis v. Donnelly*,
   199 S.W.3d 262 (Tex. 2006)................................................................. 11, 15, 21

*Winfield v. Renfro*,
   821 S.W.2d 640 (Tex. App.—Houston [1st Dist.] 1991, writ denied)......... 57, 58

*Woodward v. Liberty Mut. Ins. Co.*,
   No. 3:09-CV-0228-G, 2010 WL 1186323 (N.D. Tex. Mar. 26, 2010) ...............17

**Statutes**

Act of June 28, 2011, 82nd Leg., 1st C.S., ch. 2, § 62(a), 2011 Tex. Gen. Laws
   5180, 5205 .........................................................................................................38

Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 2, 2005 Tex. Gen. Laws 1752,
   2118, *repealed by* Act of June 28, 2011, 82nd Leg., 1st C.S., ch. 2, § 57, 2011
   Tex. Gen. Laws 5180, 5204 ..............................................................................38

TEX. CIV. PRAC. & REM. CODE § 38.001...................................................................61

TEX. INS. CODE § 2210.007 .......................................................................................39

TEX. INS. CODE § 2210.452(c) ...................................................................................41

TEX. INS. CODE § 2210.572 .......................................................................................39

TEX. INS. CODE § 541.008 .........................................................................................26

TEX. INS. CODE § 541.060(a)(4).................................................................................26

TEX. INS. CODE § 541.151 .........................................................................................26

TEX. INS. CODE § 541.152........................................................................................ 26, 61

TEX. INS. CODE § 541.152(a)(1) .................................................................................33

TEX. INS. CODE § 541.454(a)(1).................................................................................40

## Other Authorities

BLACK'S LAW DICTIONARY 749 (6th ed. 1990) ......................................................32

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY
    CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 115.10 (2012) ............33

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY
    CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 115.13 (2012) ............33

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY
    CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 101.21 (2014) ............52

COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY
    CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 101.59 (2014) ............52

## Rules

TEX. R. CIV. P. 279......................................................................................... 16, 43

TEX. R. CIV. P. 320.............................................................................................19

# STATEMENT OF THE CASE

*Nature of the case:*  League City sued TWIA for breach of contract, violations of the Insurance Code, breach of the duty of good faith and fair dealing, and fraud. CR7. TWIA answered the lawsuit and later demanded an appraisal. CR31, 43. Following the appraisal, TWIA refused to pay the award, and a jury trial followed.

*Trial Court:*  Hon. Kerry L. Neves
10th Judicial District Court
Galveston County, Texas

*Plaintiff/Appellant/Cross-Appellee:*  League City

*Defendant/Appellee/Cross-Appellant:*  TWIA

*Trial Court's Action:*  The jury found that TWIA failed to comply with the insurance policy, failed to comply with the Insurance Code, and failed to comply with its duty of good faith and fair dealing, and the jury awarded League City damages and attorney's fees. The trial court disregarded all of these findings and rendered judgment that League City take nothing on its claims against TWIA.

# ISSUES PRESENTED

1.      Whether the trial court erred in disregarding the jury's findings in favor of League City and rendering judgment that League City take nothing on its claims against TWIA.

2.      Whether League City is entitled to a new trial because the jury question on the validity of the appraisal award was improperly submitted.

3.      Whether League City is entitled to a new trial in the interest of justice because the jury found the appraisal award failed to comply with policy terms and conditions.

4.      Whether League City is entitled to a new trial because the jury charge shifted the burden of proving the amount of loss to League City, contrary to the terms of the appraisal provision.

5.      Whether the trial court correctly disregarded the jury's contract and damages findings (in response to questions 1 and 3) as immaterial or supported by legally insufficient evidence.

6.      Whether the trial court correctly disregarded the jury's Insurance Code and damages findings (in response to questions 4 and 5) as immaterial or supported by legally insufficient evidence.

7. Whether the trial court correctly disregarded the jury's good faith and fair dealing and damages findings (in response to questions 11 and 12) as immaterial or supported by legally insufficient evidence.

8. Whether the trial court correctly disregarded the jury's award of trial court attorney's fees (in response to question 17(a)).

9. Whether the trial court should have disregarded the jury's zero awards of appellate attorney's fees (in response to questions 17(b)-17(e)) and rendered judgment for League City or granted a new trial on appellate attorney's fees.

10. Whether the trial court should have disregarded the jury's answers to the questions on notice, repair receipts, and prejudice because TWIA elected to treat the policy as continuing.

11. Whether League City is entitled to rendition of judgment in its favor or a new trial because the jury questions on notice, repair receipts, and prejudice were improperly submitted.

12. Whether League City is entitled to a new trial because the trial court overruled League City's objections to the questions on notice and receipts, refused to submit League City's requested question on excuse, and/or refused League City's requested instruction on TWIA's election to treat the insurance policy as continuing.

13. Whether the trial court should have disregarded the jury's answers to the questions on notice, repair receipts, and prejudice because the answers were immaterial or supported by no evidence.

14. Whether TWIA conclusively established its limitations defense to League City's extra-contractual claims.

**STATEMENT OF FACTS**

Hurricane Ike struck on September 13, 2008. RR14:84. Two days later, League City provided written notice on TWIA's "First Notice of Loss-Claims Reporting Form." RR27:211. League City described its loss as "Wind Damage to Various Locations" and identified the insured, policy number, policy period, and date of loss.

TWIA raised no complaint about notice. RR14:43-44; 11:61-63; 10:188-90; 16:151. Instead, TWIA accepted and acknowledged League City's notice, opened a claim with a single claim number, assigned an adjuster and supervisor, and set an initial loss reserve. RR10:188-90; 11:61-63; 14:43-44; 27:212; 52:174. TWIA's Claim Notice Acknowledgment listed all 140 items covered under the policy and described the City's loss as "Hurricane Ike Damage." RR27:212.

According to the TWIA supervisor assigned to League City's claim, the adjuster who received TWIA's Acknowledgment should have inspected the listed items and prepared an estimate on each one. RR11:61-63, 66. The adjuster could not just "overlook" an item. RR11:64-65. Unless the insured said there was no damage to a particular facility, TWIA's policies required the adjuster to inspect and prepare estimates for each property. RR11:66, 104-05; 16:189. According to the TWIA claims manual: "The adjuster is expected to personally inspect and scope the loss." RR30:297. Likewise, "Adjusters are expected to make their own

estimates. . . . There should be a separate estimate per each item of insurance involved and the estimates should be clearly marked as to which item they represent." RR30:299.

Nothing about the League City claim took it outside the requirements of TWIA's claims manual. RR11:59. League City's claim should have been handled under the same guidelines and in the same manner as any other claim. RR11:60.

But it was not. RR11:65-67, 70-72; 13:91-92; 14:162-63; 16:60, 64-65, 68, 73-74, 176, 178, 181-83; 21:195-99, 204-05. The adjuster did not properly inspect, scope the loss, and write his own estimates. *Id*. The adjuster instead had the City complete repairs and submit receipts, after which the adjuster purported to determine whether the repair was covered under the policy. RR11:69-71, 93; 13:88, 91-92, 140-41, 142-42; 16:176.

TWIA's adjuster did not need to wait on repair receipts to properly adjust League City's losses. RR11:61, 66; 13:143-44; 16:69-71; 21:203-05. The adjuster could have gone to the damaged sites and within days or weeks completed his own estimates, before the City had undertaken any repairs. RR13:143-44. The adjuster should have inspected the damaged properties, determined what was and was not damaged, written estimates, applied appropriate depreciation, and made recommendations. RR16:68-69. He was capable of writing estimates; that was his job. RR16:70-71.

The adjuster's handling of League City's claim was inappropriate, unreasonable, and unacceptable. RR11:67, 81, 84, 88, 91-95; 16:55, 58, 60, 64-65, 69-70, 74; 21:195-200, 203-04. It put the City in the position of having to make repairs without knowing what and how much TWIA would cover. RR14:98-99; 16:85-86; 12:119. It also resulted in "[t]oo much delay." RR11:70. As the claim supervisor acknowledged, "[I]f you wait until an expense is incurred, obviously you didn't write the estimate and it's going to take ever how long it takes. And our job is to be fair and try to put the money based on the [adjuster's] appraisal in the insured's hand." RR11:71.

TWIA's failure to properly adjust the claim meant that League City received no payment on any part of its claim for nine months. RR16:129-30; 29:472, 509-10. Only in June 2009 did League City receive an "[a]dvance against repairs" for City Hall, but it was paid nothing on any other structure—even though TWIA had notice of damage, received receipts, and determined coverage months earlier. RR29:509-10; 12:139-40; 13:18, 125-26; 16:78-81, 114-16, 129-30. In August 2009—eleven months after Ike—TWIA finally issued a check for $304,747.40 representing payments on five identified items: Gazebo, City Hall, Community Center, Museum Storage Bldg., and Fire Station 2. RR29:498-99, 514-15. TWIA acknowledged covered losses to four other items—Library, Council Chambers,

Council Chambers CTS, and Civic Center—but made no payment because it determined the damages did not exceed the deductibles. *Id.*

Beyond delay, TWIA's failure to properly adjust the claim meant that League City was not properly compensated for its windstorm losses. RR16:71, 73; 12:136-37; 13:13-15, 135-36, 137-38, 140-44. TWIA's adjuster admitted the City was not paid for all the damages he personally documented and thought were covered by the policy, because he waited on repair receipts instead of adjusting the loss and preparing his own estimates. RR13:135-36, 140-44, 205-07.

TWIA was critical of its "'adjuster'" internally, recognizing he had provided "[v]ery poor service." RR29:486; *accord* RR11:81-83, 86-88, 91 (internal conversations "about the poor quality of work"). But TWIA did not share its concerns and criticisms with League City. *Id.*; RR11:91; 12:44. Instead, ten months after Ike, TWIA told the adjuster to close the file within two weeks or the file would be taken from him. RR29:490; 13:122; 11:87-88. Had the file been taken away, the adjuster would have been paid nothing. RR8:41; 11:87-88.

The adjuster responded that his "efforts to this point were to protect TWIA from any excessive claim," and he informed his supervisors he would make an offer to League City "based on the limited amount of data" he had in his file. RR29:492. Despite knowing the adjuster had provided poor service, had not properly adjusted the claim, and had limited information, TWIA paid League City

on the adjuster's submissions, never informed League City of its concerns with and criticisms of the adjuster's work, and never assigned another adjuster. RR16:137, 150, 160, 193-94.

League City sued TWIA in January 2012. CR7. TWIA answered the lawsuit and later demanded an appraisal. CR31; RR52:781-82. But once the appraisal award was issued, TWIA refused to pay it. CR58, 182; RR52:747.

At the conclusion of the trial, the jury found that TWIA failed to comply with the insurance policy, violated the Insurance Code, and breached its duty of good faith and fair dealing, and awarded damages. CR286-325. The jury also found that the appraisal award failed to comply with policy terms and conditions. *Id*. Although the trial court refused to ask whether TWIA's policy breach was excused, the jury found that League City failed to provide notice and repair receipts. *Id*. But the jury did not find that League City's failures occurred prior to TWIA's breach. *Id*. Without disclosing its reasoning, the trial court disregarded the jury's findings in favor of League City and rendered judgment that League City take nothing. CR678-79.

## SUMMARY OF ARGUMENT

The trial court's error in submitting the appraisal question requires a new trial on all the City's claims and causes of action. Even if the appraisal award failed to comply with the policy terms and conditions, however, a new trial should be granted, so that a new appraisal can be conducted or the parties can agree to forego the policy's appraisal requirement.

TWIA's alleged defenses do not support rendition of judgment in its favor. TWIA did not obtain a jury finding on excuse; TWIA did not conclusively establish that the City's alleged breach occurred first; and TWIA elected to treat the contract as continuing.

If a new trial is not granted, League City is entitled to rendition of judgment in its favor. Disregarding the jury findings that are favorable to League City was error; they are neither immaterial nor supported by legally insufficient evidence.

**ARGUMENT**

**I. The Trial Court Erred in Rendering Judgment for TWIA Based on the Jury's Finding that the Appraisal Award Failed to Comply With Policy Terms and Conditions.**

In asking the trial court to render judgment in its favor, TWIA argued the jury's finding that the appraisal award failed to comply with policy terms and conditions defeated League City's ability to recover on any of its claims. CR353. Because the trial court erred in submitting the appraisal question, however, a new trial is required. Moreover, the failure of the appraisal award should result in a new trial, not rendition against League City.

**A. Because the jury question was submitted improperly, a new trial is required.**

"An insurance policy is a contract, generally governed by the same rules of construction as all other contracts." *RSUI Indem. Co. v. The Lynd Co.*, 58 TEX. SUP. CT. J. 854, No. 13-0080, 2015 WL 2194201, at *2 (Tex. May 8, 2015). Thus, appraisal clauses should be enforced "[l]ike any other contractual provision." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009).

The appraisal provision in this case provides:

> Appraisal. If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent and independent appraiser…. The two appraisers will choose a competent and independent umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge…. The two appraisers will then determine the amount of loss, stating separately the actual cash value and loss to each item.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will determine the amount of the loss.

RR27:157.

The appraisal provision "directs the appraisers to decide the 'amount of loss,' not to construe the policy or decide whether the insurer should pay." *See Johnson*, 290 S.W.3d at 890. The provision does not require that an appraiser or umpire be qualified "to make complex liability determinations under an insurance policy. There is no requirement that they be licensed." *Id*. at 890 n. 23 (quoting Br. of TWIA as Amicus Curiae at 8). There is no requirement that the appraisers or umpire be insurance experts or forensic engineers "qualified to make policy interpretations or to determine cause and origin of the damage being claimed." *Id*. The appraisers are directed to determine the amount of loss, not to apply all policy terms and conditions or determine coverage. *Id*. "There is no explicit requirement that the appraisers and umpire inspect the property or read the policy, and many do not." *Id*.

If the two appraisers fail to agree, they submit their differences to an "umpire"—who is often a lawyer or mediator "with no particular experience or expertise in property insurance coverage or claims." *Id*. Unlike the appraisers, the umpire has no obligation to "determine the amount of loss, stating separately the actual cash value and loss to each item." RR27:157. An undefined "itemized

decision" agreed to by any two of the appraisers and/or umpire determines "the amount of the loss," not every question of coverage, causation, and liability. *Id.*

All of this makes sense, because "the scope of appraisal is damages, not liability." *Johnson*, 290 S.W.3d at 890. "[A]ppraisers have no power or authority to determine questions of causation, coverage, or liability." *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 684 (Tex. App.—Dallas 1996, writ denied). "Indeed, the function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy." *Id.* at 685. "Nothing in the insurance policy authorizes the appraisal panel to interpret provisions of the policy or to consider or resolve questions of causation, coverage, or liability." *Germania Farm Mut. Ins. Ass'n v. Williams*, No. 11-00-00393-CV, 2002 WL 32341841, at *4 (Tex. App.—Eastland May 23, 2002, no pet.) (not designated for publication); *see Wells*, 919 S.W.2d at 684, 685.

Ignoring "this distinction between *damage* questions for appraisers and *liability* questions for the courts," *Johnson*, 290 S.W.3d at 889, the jury was asked, "Does the appraisal award fail to substantially comply with the policy terms and conditions?" CR321. And the trial court instructed the jury that "'[s]ubstantial compliance' means a good faith effort by the appraisers and umpire to follow and

apply the terms and conditions of the policy to the covered loss caused by Hurricane Ike." *Id.*

League City objected because interpretation of the insurance policy is a question of law for the court, and the appraisers and umpire are not required to apply all policy terms and conditions; rather they are required to comply with the terms of the appraisal provision. RR22:19-20. League City also asked the trial court to instruct the jury on the appraisal language in the policy. CR332. The trial court overruled League City's objections and refused its proposed instruction. *Id.*; RR22:20.

When there is no ambiguity, it is the court's duty to construe the agreement and instruct the jury "as to the rights of the parties thereunder." *Soell v. Haddon*, 85 Tex. 182, 187, 19 S.W. 1087, 1089 (1892). "A trial court should not modify the terms of an unambiguous policy when instructing the jury, therefore, but should follow the terminology contained in that policy." *Mut. Life Ins. Co. of N.Y. v. Steele*, 570 S.W.2d 213, 217 (Tex. Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.) (citing *Int'l Travelers Ass'n v. Marshall*, 131 Tex. 258, 262, 114 S.W.2d 851, 852 (1938)). In the event of an ambiguity, "'[the court] must resolve the uncertainty by adopting the construction that most favors the insured[.]'" *RSUI*, 2015 WL 2194201, at \*3 (citation omitted).

The trial court's instruction—that the appraisal award fails to substantially comply with policy terms and conditions if the appraisers and umpire failed to follow and apply the terms and conditions of the policy to the covered loss caused by Hurricane Ike—affirmatively misstates the unambiguous terms of the policy and is legally incorrect. RR27:157. The appraisal award did not have to comply with all "policy terms and conditions" and the umpire and appraisers had no obligation "to follow and apply the terms and conditions of the policy to the covered loss caused by Hurricane Ike." *See* RR27:157; *Johnson*, 290 S.W.3d at 889-90; *Wells*, 919 S.W.2d at 684-85. The appropriate question was "whether there was substantial compliance with the appraisal mandates." *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875-76 (Tex. App.—San Antonio 1994, no writ). The appraisers and umpire must follow and apply "the appraisal section of the policy," not every policy term and condition. *Wells*, 919 S.W.2d at 683.

An incorrect jury instruction is grounds for reversal if it probably caused the rendition of an improper judgment. *Willis v. Donnelly*, 199 S.W.3d 262, 275-76 (Tex. 2006). To determine whether the instruction probably caused an improper judgment, the court examines the entire record. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). "An improper instruction is especially

likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting, as it was in the present case." *Id.*

This trial turned on the validity, effect, and appropriateness of the appraisal award. In opening argument, TWIA's counsel asked: "Why is Texas Windstorm here?" RR7:85. He answered: "Two principal reasons. [First,] [t]he appraisal award is absolutely not, absolutely not in substantial compliance with policy terms and conditions." *Id.*

After insisting that "[p]rior payments and applicable deductibles are easy to figure out by looking at the policy," TWIA's counsel criticized the umpire and League City's appraiser for not reading the policy: "Neither of the two gentlemen whose numbers make up the appraisal ever had possession of the TWIA insurance policy. Never read the TWIA insurance policy." RR7:86. He argued that "the appraisal based on policy language should have involved only the buildings that were called to TWIA's attention during the adjustment period." RR7:95. He continued: "Policy terms and conditions. To this very day . . . the receipts for the repairs that League City did . . . those receipts have never to this day been produced or given to TWIA or the appraisers . . . ." RR7:95-96.

Having highlighted the evidence in opening argument, TWIA introduced the umpire's testimony that he had never seen the insurance policy and had not read it; that he did not know what the policy covered; that he did not "get involved into

whether these numbers are applicable under the policy;" that he did not determine whether exclusions applied, for example whether "different items involved increased cost of construction;" and that he did not get receipts. RR21:124-28.

TWIA also elicited testimony from its corporate representative that the appraisal award did not "rule out other sources for the leaks." RR9:39. "It doesn't go into any causes at all." RR9:40. TWIA's corporate representative criticized the appraisers for not obtaining receipts and maintenance records, RR9:38, and for not attaching "documentation as to the cost or reason for replacing the roofs on the library, civic center or City Hall." RR9:43-44; *accord* RR8:217. He criticized the award because "it's impossible for us to tell if some of those items are not covered under the policy, if some of the damage noted here was from another peril besides wind and hail, or in this case the actual cash value, did it include sales tax? Did it include over[head and] profit? We can't tell any of those things that are all policy terms and conditions from a lump sum number like that." RR10:44-45.

In closing argument, TWIA emphasized the erroneous jury instruction and berated the umpire for not reading the policy and not applying its terms and conditions: "Now, how in the world can a man say that he is applying the terms and conditions of the policy or that his appraisal meets those terms and conditions when he doesn't have the document? . . . He didn't even have it. It's not that he said, 'Well, I looked at it a little bit, scanned it, flipped through it.' Nothing. Did

47367_1                                    13

not have the document on which he has to base his award." RR22:142-43. TWIA's lawyer continued: "I don't want to belabor Mr. Burgess' testimony, but 22, 'Does the appraisal award fail to substantially comply with the policy terms and conditions?' You've got a definition for substantial compliance means a good faith effort by the appraiser's umpire to follow and define the terms and conditions of the policy to the covered loss. And we covered this when we were talking about No. 2. But just so we don't forget it, Mr. Burgess in his testimony never had the policy. Doesn't apply the policy terms and conditions. Didn't even look at the policy when he came up with his appraisal numbers. So, how in the world can the award meet the policy terms and conditions if you don't have the policy, if you don't know what it says? It doesn't." RR22:156.

The validity of the appraisal award was a hotly contested, critical issue. "To ask the jury to resolve this dispute without a proper legal definition to the essential legal issue was reversible error." *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992). The trial court's erroneous instruction wrongly allowed TWIA's witnesses to opine and TWIA's counsel to argue that the appraisal award was invalid and untrustworthy because the appraisers did not read or apply the policy's myriad terms, conditions, and exclusions. The jury reached an improper verdict premised on an improper submission which led to the

rendition of an improper judgment.  The trial court's error was not harmless, and it entitles League City to a new trial.  *Id*.; *Willis*, 199 S.W.3d at 275-76.

Alternatively, in submitting question 22 broadly and asking whether the appraisal award failed to substantially comply with unspecified policy terms and conditions, the Court commingled potentially valid and invalid legal theories and has made it impossible for this Court to determine whether the jury based its verdict on a properly submitted theory for avoiding the appraisal award or an invalid theory that should not have been submitted.  *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388-89 (Tex. 2000).  The appraisers and umpire had no obligation to read and "construe the policy or decide whether the insurer should pay."  *Johnson*, 290 S.W.3d at 890.  Yet, the charge allowed TWIA to argue exactly that, and the jury apparently accepted TWIA's argument in answering yes to question 22.  In this situation, the error is presumed harmful and League City is entitled to a new trial.  *Texas Comm'n on Human Rights v. Morrison*, 381 S.W.3d 533, 536-38 (Tex. 2012) ("TCHR timely objected to the question at issue, which allowed the jury to find liability based on an invalid legal theory.  Therefore, we presume harm . . . and remand the case to the trial court for a new trial.").

**B.** **If the appraisal award failed to comply with the policy terms, a new trial should be granted.**

Even if given effect, the jury's rejection of the appraisal award should result in a new trial. Upon remand, a new appraisal can be conducted or the parties can agree to forego the insurance policy's appraisal requirement.

The appraisal provision binds the parties to have the amount of loss determined in a particular way. *See* RR27:157; *In re Allstate County Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002). The appraisal clause does not provide for a forfeiture of that right, and the policy states that a provision can be waived only by an endorsement made part of the policy. *See* RR27:157-58; *In re S. Ins. Co.*, No. 09-11-00022-CV, 2011 WL 846205, at *2 (Tex. App.—Beaumont Mar. 10, 2011, orig. proceeding) (mem. op.). In the absence of a valid waiver, the appraisal clause is enforceable. *E.g., In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("Where an insurance contract mandates appraisal to resolve the parties' dispute regarding the value of a loss, and the appraisal provision has not been waived, a trial court abuses its discretion and misapplies the law by refusing to enforce the appraisal provision.").

The jury was not asked to and did not find that League City or TWIA waived or was estopped from insisting on compliance with the appraisal provision. *See* TEX. R. CIV. P. 279 ("[A]ll independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted

or requested are waived."). Furthermore, TWIA never asked the court to declare the appraisal provision void or unenforceable, and the trial court could not make such a determination on its own motion. *See* CR58-59; *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 450-51 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ("A trial court cannot grant relief to a party in the absence of pleadings[.]").

Assuming the jury now has "invalidated the Appraisal Award," CR363, League City had no obligation to have anticipated that the jury would fix the amount of loss in contravention of the policy's appraisal provision—especially when neither TWIA nor League City had pleaded the appraisal provision was unenforceable. *See Mitchell v. Aetna Cas. & Sur. Co.*, 579 F.2d 342, 352 (5th Cir. 1978) (concluding that insured "could not have anticipated that the jury would fix the amount of loss" and agreeing with insurers that defective appraisal should be remanded to original appraisers for correction). Numerous courts have held that the failure of an attempted appraisal does not abrogate the policy's appraisal provision and allow a jury to determine the amount of loss. *See, e.g., id.*; *St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 765 (E.D. La. 2010) (holding "remand to the appraisers is the most reasonable approach"); *Woodward v. Liberty Mut. Ins. Co.*, No. 3:09-CV-0228-G, 2010 WL 1186323, at *3-4 (N.D. Tex. Mar. 26, 2010) (granting insurer's motion to compel

appraisal after determining that appraisal process had not been completed in compliance with policy); *Grady v. Home Fire & Marine Ins. Co.*, 63 A. 173, 174-76 (R.I. 1906) (failure of appraisal did not allow insured to sue on policy without complying with demand for new appraisal).

No court has held that an insured must prove the amount of its losses in contravention of the appraisal clause merely because the appraisal award has been challenged. To the contrary, the Dallas Court of Appeals disregarded an appraisal award and thereafter remanded the insured's claims for a new trial on the merits as to both liability and damages. *Wells,* 919 S.W.2d at 686-87. The court concluded: "The Wellses are not required to again participate *involuntarily* in yet another appraisal . . . when they have suffered a defective appraisal process through no fault of their own." *Id.* (emphasis added).

Equally in the case, if the appraisal award is disregarded, the result should be a new trial, not rendition of judgment against League City. *Id.* TWIA should not be able to avoid paying League City for covered losses because of a failure by the umpire or the appraisers to deliver the appraisal award contemplated by the policy. And having spent more than $150,000 in appraiser and umpire fees, CR552, League City should not be deprived of its policy benefits because the appraisers and/or umpire misunderstood their obligations.

If the appraisal award failed to substantially comply with policy terms and conditions, the Court should order a new trial on all issues, so that a new appraisal can be conducted or the parties can agree to forego the insurance policy's appraisal requirement. *See* TEX. R. CIV. P. 320 ("[A] separate trial on unliquidated damages alone shall not be ordered if liability issues are contested.").

## II. If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Breach of Contract Claim.

A new trial should be granted on all issues. If a new trial is not granted however, League City is entitled to rendition of judgment based on the jury's favorable findings on its breach of contract claim.

### A. The jury's finding that TWIA failed to comply with the insurance policy is supported by at least some evidence.

In response to question 1, the jury found that TWIA failed to comply with the insurance policy. CR289. TWIA never challenged the jury's breach finding as supported by no evidence. *See* CR350-82. The finding is amply supported.

TWIA's corporate representative testified that TWIA would breach the insurance policy if it did not properly investigate a claim, if it failed to pay what is owed under the policy, or if it failed to timely pay what is owed. RR10:213. A reasonable investigation requires that an adjuster obtain enough information to write an accurate estimate. RR8:28. "The adjuster is expected to personally inspect and scope the loss." RR30:297. "A scope is what the adjuster compiles

during his inspection. It's all the information that he gets; dimensions, the type of building materials, where the damage is, where the damage isn't…. Without a scope, you can't write an estimate." RR16:64-65.

TWIA's adjuster did not properly inspect, scope the loss, and write estimates. RR11:59-72; 13:91-92; 14:162-63; 16:60, 64-65, 68, 73-74, 176, 178, 181-83; 21:195-99. TWIA could not just wait on repair receipts as an excuse or substitute for properly investigating and adjusting League City's claim. RR11:70-72, 93; 16:68-71, 138-40, 144; 21:198-99. The failure of the adjustment process meant the City did not get paid what it was owed under the policy and did not get paid in a timely manner. RR13:14-15, 18-19, 27, 29-30; 16:70-71, 73-74, 129-30, 136, 140, 149; 21:202, 204, 196-97; 10:186-87.

**B. There is at least some evidence of League City's damages.**

Question 3 asked, "What amount of the appraisal damage award is for damage caused by windstorm?" CR293. As TWIA recognized, question 3 is a "damage" question that allowed the jury to find the amount of League City's windstorm damages without regard to the appraisal award. RR22:36-37.

League City objected to question 3 on the ground that it had no burden to prove the dollar amount of the damage caused by Hurricane Ike. RR22:11. League City's only burden was to prove that TWIA failed to pay for covered losses under the policy. *Id*. Under the terms of the policy, the appraisal award sets the

amount of loss. *Id.* Because the jury charge improperly shifted the burden of proving the amount of loss to League City contrary to the terms of the appraisal provision, League City should be granted a new trial so that the appraisal provision can be enforced or the parties can agree to waive the appraisal provision. *See* section I.B. above; *see also Willis*, 199 S.W.3d at 275-76 (erroneous charge on measure of damages required remand).

In any event, TWIA's adjuster admitted that League City was never paid for a "good amount" of the damages that he personally documented and determined "were caused by Ike and covered by the policy[.]" RR13:140-44.

Tony Meyer, League City's facilities maintenance supervisor, inspected many of League City's facilities immediately after the storm, and he explained the hurricane damage he saw on a structure-by-structure basis. *See, e.g.*, RR14:102-07 (library), 107-09 (park gazebo), 120-24 (city hall), 128-32 (civic center), 132-35 (community center), 141-43 (fire station 1), 146-47 (vehicle maintenance), 157-59, 161 (fire station 2), 15:52-54 (library), 54-55 (council chambers), 55-57 (community center), 60 (vehicle maintenance), 65 (fire station 1), 71-72 (fire station 2), 75-76 (museum storage). The jury also heard from the City's forensic engineering expert, who inspected the structures, spoke with witnesses, and offered his opinions on the specific damage caused by windstorm. *See* RR17:6-8, 18-20, 36, 37-77 (library); 78-88 (council chambers); 88-94 (city hall); 94-112 (civic

center); 112-20 (community center); 18:13-15 (library), 15-16, 18 (council chambers), 18-23 (city hall), 24-34 (civic center), 43-45 (vehicle maintenance), 45-50 (fire station 1), 50-57 (fire station 2).

As for the dollar value of the damage, TWIA's corporate representative explained that he had analyzed the appraisers' estimates, all available photographs, the engineering reports and the policy, and created his own "adjusted award" for each policy item. RR8:109, 114-16; 10:138-39; 27:256-63. His analysis had "nothing to do with" the appraisal award. RR10:139-40. Instead, his adjusted award was based on the damage he could document four or five years after the loss. RR7:166; 8:112-13, 115-16. And his adjusted award applied the insurance policy terms and conditions, including exclusions. *Id.* His spreadsheet supplied the jury with his estimate of the City's Hurricane Ike damage, the estimates of each appraiser, and the amounts previously paid by TWIA. *See* RR27:262-63.

The corporate representative's testimony and spreadsheet provide some evidence supporting the jury's answers to question 3 and preclude rendition of judgment against League City. But the jury also had the detailed estimates of both appraisers, multiple repair bids for City Hall, the City's records documenting Hurricane Ike expenses, and the adjuster's spreadsheets identifying Hurricane Ike damage. *See* RR21:20; 29:355-430; 31:373-79; 32:52-70; 33:114-24; 34:178-91,

237-46, 390-95; 35:105-17, 366-74; 36:52-58, 266-71, 363-81; 37:163-66, 173-98; 38:67-70, 143-54; 44:373-86, 523-29, 561-77; 46:343-496, 695-734; 52:1402-07.

TWIA's corporate representative testified that the jury could reach its own conclusions about the amount of the City's covered losses, just as he had, by examining the two appraisers' estimates, the policy, the photographs, "and everything else." RR8:116. That is what the jury did.

The jury's damage awards are supported by the evidence, and the trial court erred in disregarding them. Even if there were not legally sufficient evidence to support the entire amount of damages, the result should be a new trial, not rendition. *See Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex. 2007) ("[W]hen there is evidence to support some damages it is not appropriate to render judgment.").

## C. TWIA's complaint about disclosure responses does not support rendition.

TWIA's complaints that League City did not adequately disclose its damage model do not support rendition, and the trial court correctly overruled TWIA's complaints. *See* RR6:5-7; 22:36-37.

League City disclosed the following regarding its claims and damages:

[T]he City has not been properly compensated under the terms of its insurance policy. . . . TWIA wrongfully denied Plaintiff's claim for repairs of the Properties, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, TWIA underpaid some of Plaintiff's claims by not providing full coverage

. . . . As such, Plaintiff has not been paid in full for the damages to its Properties . . . .

An Appraisal Award totaling $3,449,755.37 was entered in this case on October 24, 2013. Plaintiff will rely on this appraisal award to determine the amount of the loss, as both TWIA and League City agreed . . . .

Plaintiff will seek damages for breach of contract, violations of [the Insurance Code], breach of the duty of good faith and fair dealing and fraud . . . [A]ll amounts will be ultimately determined by the jury. . . . For breach of contract, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of its claim, together with attorneys' fees.

CR211-14.

The City appropriately disclosed that it would "rely on" the appraisal award "to determine the amount of the loss." CR214. Nonetheless, that disclosure does not identify "the Appraisal Award as its [exclusive] method for calculating its damages." *Cf.* CR366. To the contrary, the City disclosed that it had "not been properly compensated under the terms of its insurance policy," had "not been paid in full for the damages to its Properties," and was "entitled to regain the benefit of its bargain." CR211-14.

Moreover, Strickland's testimony explaining his analysis of the appraisers' estimates and Strickland's spreadsheet (identifying the amount of each appraiser's estimate and Strickland's "adjusted award" for each structure) were admitted without objection. RR7:41-42, 46; 8:109-16; 10:139-40; 27:262-63. The City's

claim documents and Gauthier's spreadsheets were also admitted without objection. RR7:41-42; 12:91-92.

The unobjected-to evidence supports the submission of and answers to question 3. *See Stewart & Stevenson LLC v. Foret*, No. 01-11-01032-CV, 2013 WL 4337319, at *5 (Tex. App.—Houston [1st Dist.] Aug. 15, 2013, no pet.) (mem. op.) (obligating trial court to submit an issue if there is more than a scintilla of evidence on issue); *Guevara*, 247 S.W.3d at 670 (rendition inappropriate "when there is evidence to support some damages").

In any event, the erroneous admission of evidence in violation of disclosure requirements would lead to a new trial, not rendition of judgment in TWIA's favor. *See Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 912, 917 (Tex. 1992).

Likewise, the submission of an erroneous damages question would result in a new trial, not rendition of a take-nothing judgment against League City. *See Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (defective jury question is not immaterial and authorizes trial court "only to grant a new trial, not to render judgment notwithstanding the verdict"); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (remanding for new trial when defective damages question submitted); *Guevara*, 247 S.W.3d at 670.

**III. If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Insurance Code Claim.**

If the Court does not grant a new trial, it should render judgment in favor of League City on its Insurance Code claims. Those claims are independent of the City's contract claim, and the jury's findings are material and supported by legally sufficient evidence. *See Spencer*, 876 S.W.2d at 157 (holding trial court can disregard jury finding only if it is immaterial or supported by no evidence).

**A. The finding that TWIA violated the Insurance Code is supported by some evidence and is material.**

Chapter 541 of the Texas Insurance Code was enacted to protect insurance consumers by prohibiting unfair and deceptive acts or practices in the business of insurance. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260 (Tex. 2002). The chapter is to be "liberally construed and applied" to promote its purposes. TEX. INS. CODE § 541.008.

Chapter 541 states that it is an unfair or deceptive act or practice for an insurer to fail to affirm or deny coverage of a claim within a reasonable time. *Id*. § 541.060(a)(4). And the chapter expressly authorizes a private right of action against an insurer by an insured who sustains actual damages caused by the deceptive act or practice. *Id*. § 541.151. The insured is entitled to recover "actual damages, plus court costs and reasonable and necessary attorney's fees." *Id*. § 541.152.

The jury's finding that TWIA failed to affirm or deny coverage within a reasonable time, is supported by the evidence. TWIA never argued otherwise. *See* CR367-68.

TWIA did not properly determine and communicate the amount of League City's covered losses. RR16:65, 72, 73-74, 115, 146-47, 176, 178, 181-93, 185-89, 193-94. TWIA was to determine coverage within 30 days of the claim. RR16:69, 110. This is a "very important" part of the adjuster's job, RR16:112, and the City needed to know whether the claim would be accepted or denied. RR16:84. But TWIA's adjuster was still trying to figure out coverage in April 2009. RR16:78, 81, 112. Nine months after the hurricane, the adjuster still had not written any estimates. RR16:129-30. That was too late and unreasonable. RR11:67, 84, 88; 16:110, 115; 21:196-97.

TWIA's own representatives acknowledged that the adjuster did not properly and timely determine League City's covered losses. *Id.* A claims supervisor with TWIA testified that the adjuster should have had enough information to determine covered losses before August 4, 2009. RR21:146, 202. The adjuster, not League City, was supposed to inspect, identify damages, determine coverage, and write estimates. RR21:204-06. Another TWIA supervisor agreed. RR11:63-67, 69-72, 93.

It was not appropriate to wait for the insured to make repairs and *then* determine whether a repair receipt was covered under the policy. RR11:70-72, 88, 93; 16:69-70. That process resulted in "[t]oo much delay." RR 11:70. The adjuster should have been able to determine coverage at the time of his inspection, RR16:110, and did not need to wait for receipts. RR13:143-44; 16:87-88, 108-10. The adjuster's duty was to adjust the claim and prepare estimates of the City's covered losses without waiting for receipts. RR13:143-44; 16:87-88, 108-10. Thus, reimbursing the City for receipts did not excuse TWIA's failure to properly determine coverage for the City's losses in the first instance. RR16:138. The adjuster did not need receipts from the City to adjust and estimate the claim. RR11:68, 70, 74; 16:74, 115, 147.

All of this evidence is sufficient to support the jury's finding that TWIA failed to affirm or deny coverage in a reasonable time.

### B. League City's Insurance Code claims are independent of its breach of contract theory.

Instead of challenging the evidence supporting the jury's findings that it violated the Insurance Code, TWIA argued that rejection of League City's contract claim defeats recovery under chapter 541. CR367. That is incorrect, and it is also inconsistent with TWIA's claim that the jury's breach-of-contract finding was immaterial. Because a policy claim is independent of a bad-faith claim, League City did not need to prove that TWIA breached the insurance policy to recover

under the Insurance Code.  But League City did obtain a finding that TWIA breached the policy.  CR289.

### 1. League City does not need a finding that TWIA failed to comply with the policy to recover under the Insurance Code.

TWIA argued below that "rejection of League City's breach of contract claim defeats recovery under Chapter 541."  CR367.  In support, TWIA cited *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010).  *Page* does not support TWIA's argument.  *Page* provides that if "the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive."  *Id.*  *Page* continues: "There can be no liability under . . . the Insurance Code if there is no coverage under the policy.  Similarly, to the extent the policy affords coverage, extra-contractual claims remain viable."  *Id.*; *see also Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) ("There can be no liability under article 21.55 if the insurance claim is not covered by the policy."); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340-41 (Tex. 1995) ("As a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered.").

TWIA's argument is a classic "misidentifying the cause" logical fallacy.  TWIA misreads the cases above as holding that the inability to recover on a contract theory—for any reason—necessarily defeats recovery on extra-contractual

claims. But it is the absence of coverage alone that can defeat extra-contractual claims. *Id.*

Here it is undisputed that League City sustained at least some covered windstorm losses, as TWIA determined. RR29:498. The dispute was over the amount of League City's covered losses, not whether coverage existed at all. TWIA has never argued—much less has it established—that it did not breach the policy because no part of League City's claim was covered by the policy. *Id.*

TWIA's argument, taken at face value, is that a bad-faith claim is wholly dependent on the policy claim—that is, an insured cannot recover under the Insurance Code unless he also recovers under the contract. That argument flies in the face of significant authority to the contrary.

The supreme court has repeatedly held that "a policy claim is independent of a bad faith claim." *Stoker*, 903 S.W.2d at 340-41. "[R]ecovery for bad faith does not depend on a breach of the insurance contract." *Id.* at 344 (Spector, J., concurring). "A breach of an insurance contract claim is separate and distinct from bad faith, Insurance Code or DTPA causes of action." *U.S. Fire Ins. Co. v. Millard*, 847 S.W.2d 668, 672 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). "Both the DTPA and the Insurance Code provide that the statutory remedies are cumulative of other remedies." *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988). "[A] breach of the duty of good faith and

fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract." *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).[1]

The issue of coverage has not been conclusively established in TWIA's favor on the entirety of League City's claim, so there is no basis for disregarding the jury's liability finding on violation of the Insurance Code.

### 2. Moreover, the jury found that League City failed to comply with the contract.

Moreover, if a breach of contract finding were a prerequisite for recovery under the Insurance Code, League City obtained it. CR289. TWIA has never challenged the jury's breach finding as supported by no evidence. CR350-82. And that finding is supported by legally sufficient evidence. *See* Section II.A. Accordingly, if an insured's recovery for Insurance Code violations depends upon a breach finding, League City has the requisite jury finding and evidence to support it. *See United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 11-12 (Tex. App.—Houston [14th Dist.] 2014, pet. dism'd) (allowing insured to recover under

---

[1] Because League City's Insurance Code claims are separate from, and do not depend on, its policy claim, and for the same reasons discussed in section V, TWIA's arguments based on the policy defenses do not and cannot prevent League City from recovering under the Insurance Code.

the Insurance Code where insured "pleaded and proved that its claim was covered and its insurer breached the contract").[2]

Contrary to TWIA's argument, a jury finding cannot be both "immaterial" and "necessary." *See* CR361, 367. Those words are antonyms; immaterial means "not material, essential, or necessary." BLACK'S LAW DICTIONARY 749 (6th ed. 1990). If the jury's finding that TWIA breached its contract is necessary for recovery under the Insurance Code, then it is not immaterial and cannot be disregarded. *See Oilwell Div., U.S. Steel Corp. v. Fryer*, 493 S.W.2d 487, 491 (Tex. 1973) (holding that a necessary element of fraud could not be an "immaterial" finding); *Outlet Co. v. Int'l Sec. Group, Inc.*, 693 S.W.2d 621, 630 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) ("[N]one of these issues are immaterial because ordinary negligence is necessary to show a right to actual damages and a finding of malice is necessary for punitive damages.").

### C. The finding of damages caused by TWIA's deceptive act is supported by some evidence and is material.

#### 1. League City can recover benefit-of-the-bargain damages.

TWIA argued below that "[t]here can be no recovery under Chapter 541 unless the insured suffers an injury '*independent* of the policy claim.'" CR368. That is incorrect. When, as here, a property insurer fails to pay the full amount of

---

[2] The City also has a sufficient damages finding on its breach claim. *See* Sections II.B. and II.C.

the claim as a result of an unfair claims-settlement practice, the insured may elect to recover its damages under either a breach-of-contract or a statutory-violation theory. *AMJ Invs.*, 447 S.W.3d at 11.

The Insurance Code provides that a prevailing plaintiff is entitled to recover "the amount of actual damages" caused by the insurer's deceptive act or practice. TEX. INS. CODE § 541.152(a)(1). The Insurance Code does not define "actual damages," but the supreme court has. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995). "Actual damages are those damages recoverable under common law." *Arthur Andersen*, 945 S.W.2d at 816. And under the common law, benefit-of-the-bargain damages are one measure of direct actual damages. *Id.* at 817; *see Roustan v. Sanderson*, No. 02-09-00377-CV, 2011 WL 4502265, at *8 (Tex. App.—Fort Worth Sept. 29, 2011, pet. denied) (mem. op.). Given this well-settled understanding of the meaning of "actual damages," the Texas Pattern Jury Charges expressly recognize the appropriateness of a benefit-of-the-bargain measure of damages for Insurance Code violations. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 115.10, 115.13 (2012).

The supreme court has long held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Vail*, 754 S.W.2d at 136; *see Waite Hill*

*Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184-85 (Tex. 1988) (holding that insured was required to elect its theory of recovery when insurer's policy breach, violation of Insurance Code, and breach of duty of good faith and fair dealing caused a single injury—failure to pay policy benefits due).

Relying on *Vail* and *Waite Hill*, the Fourteenth Court of Appeals recently rejected an insurer's identical argument "that in the absence of independent injury, 'judgment cannot be rendered under the Insurance Code for *amounts owed under the policy*.'" *AMJ Invs.*, 447 S.W.3d at 11-12. Because League City proved its claim was covered and TWIA breached the policy, "the absence of an independent injury does not foreclose liability for [TWIA's] violation of the Insurance Code." *Id*.

### 2. The evidence supports the jury's finding of damages caused by TWIA's failure to affirm or deny coverage.

As the Insurance Code permits, League City submitted a benefit-of-the-bargain measure of damages. CR297. The jury awarded $105,778.00 as the sum of money that would fairly and reasonably compensate League City for its actual damages caused by TWIA's failure to affirm or deny coverage, considering "[t]he difference, if any, between the amount that should have been paid by TWIA to League City under the policy and the amount TWIA paid to League City for its windstorm damages ($765,200.04)." *Id*.

There is ample evidence that had TWIA affirmed coverage within a reasonable time, League City should and would have been paid at least the additional $105,778.00 found by the jury. *See New Process Steel Corp. v. Steel Corp. of Tex., Inc.*, 703 S.W.2d 209, 216 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Confirming coverage is a priority. RR10:179. TWIA's duty to determine coverage necessarily includes a determination of the amount of damage that was sustained and covered by the policy. *See TIG Ins. Co. v. Via Net*, 178 S.W.3d 10, 20 n.9 (Tex. App.—Houston [1st Dist.] 2005), *rev'd on other grounds*, 211 S.W.3d 310 (Tex. 2006) ("The term 'coverage' in the insurance context 'normally refers' to 'the amount and extent of risk included in the scope of the policy.") (citing *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1176 (D.C. Cir. 2003)).

To that end, the field adjuster was charged with contacting the insured, inspecting the property, and preparing his own independent estimate of covered losses. RR11:61, 65-66; 16:50-52, 65-71, 73, 144; 21:203-05. He should have prepared his own estimate on each item listed on TWIA's claim acknowledgment and documented for League City what was and was not being covered. RR11:62-65; 16:114-17. He need not have and should not have waited on or required the City to complete repairs and submit a receipt before determining the existence and

amount of covered losses. RR11:69-70, 93; 13:143-44; 16:68-70, 74, 139, 144; 21:198-99, 204-05.

Because the adjuster did not properly adjust the claim and prepare estimates, there was "[t]oo much delay," and he could not and did not determine the correct amount of covered damages. RR11:67, 70-71; 12:134, 136-37; 13:13-15, 135-38, 140-44; 16:51, 70-71, 73.

There would have been no dispute and no lawsuit had the adjuster taken the information he was provided, properly adjusted the claim, and determined the amount of the City's covered losses. RR15:191-92. "[I]f the documentation had taken place at the time the adjuster was out there and the estimates had been prepared in accordance with what the policy requires in industry standards, we likely would not be here today." RR16:135, 136.

The connection between TWIA's failure to affirm coverage and the damages found by the jury was clear even to TWIA itself:

> These are the complaints about Paul Gauthier. He didn't get on any roofs. You'll hear that he didn't, quote, "scope," close quote, every building. You'll learn what "scoping" means in the insurance adjusting business.
>
> He did only cursory inspections. He wanted League City to, quote, "adjust its own claim." And the claim will be that if Paul Gauthier had only looked in 2008 and 2009, he would have found what Paul Tierce, one of the two appraisers, found in 2013.

RR7:105; *see also* RR15:174 ("It was poorly adjusted. And it if had been properly adjusted, all of these significant damages would have been discovered.").

The jury agreed that because TWIA's adjuster did not properly and timely determine the amount of the City's covered losses, TWIA failed to identify $105,778 in additional damages that should have been, but were not, paid to the City. CR297. TWIA itself calculated the proper amount that it believed was owed to League City to be $344,841.75. *See* RR7:166-67; 27:256-63, and pp. 22-23 above. The jury's much smaller award is supported by TWIA's own calculations of what TWIA admitted was owed. *Id*. The court could not grant a take-nothing judgment in favor of TWIA. At a minimum, a new trial must be granted. *Guevara*, 247 S.W.3d at 670.

## D.  League City is not statutorily prohibited from recovering against TWIA on its Chapter 541 claims.

TWIA also tried to escape extra-contractual liability by claiming that, notwithstanding express language permitting the City to recover against TWIA under chapter 541, the Legislature really meant to *prohibit* such recovery. CR369-72.

Section 2210.552 of the Insurance Code, in effect during the City's policy period, is unambiguous in specifically allowing Chapter 541 claims against TWIA:

> (a)  Except as provided by Sections 2210.007 and 2210.106, a person insured under this chapter who is aggrieved by an act, ruling, or decision of the [Texas Windstorm Insurance]

association relating to the payment of, the amount of, or the denial of a claim may:

> (1)    bring an action against the association, including an action under Chapter 541[.]

Act of May 24, 2005, 79th Leg., R.S., ch. 727, § 2, 2005 Tex. Gen. Laws 1752, 2118, *repealed by* Act of June 28, 2011, 82nd Leg., 1st C.S., ch. 2, § 57, 2011 Tex. Gen. Laws 5180, 5204.[3]

Nothing in the Legislature's language suggests an intention to grant TWIA immunity from Chapter 541 causes of action, which is why League City's windstorm policy expressly states:

> [Y]ou may . . . bring a legal action against us, in accordance with Section 2210.551 and Section 2210.552 of the Texas Insurance Code. Your options under each section are as follows:
>
> *****
>
> A person . . . may: (1) bring an action against the association, including an action under Chapter 541[.]

RR27:158.

This clear text is determinative of intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen."). "If a statute is clear and unambiguous, we apply

---

[3] The 2011 repeal of Section 2210.552 applied only to policies delivered, issued for delivery, or renewed by TWIA on or after November 27, 2011, that is, the 60th day after the effective date of the Act (September 28, 2011). *See* Act of June 28, 2011, 82nd Leg., 1st C.S., ch. 2, § 62(a), 2011 Tex. Gen. Laws 5180, 5205.

its words according to their common meaning without resort to rules of construction or extrinsic aids." *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007).

Undaunted by the express language of section 2210.552, TWIA argued that the Legislature immunized it from chapter 541 claims by enacting provisions permitting the payment of a chapter 541 judgment only from an insurer's capital or surplus while prohibiting TWIA from maintaining capital or surplus funds. CR369-71. TWIA's argument should be rejected.

First, TWIA's argument renders meaningless section 2210.552's authorization of a suit against TWIA under chapter 541. Such a construction violates canons of statutory construction. *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone. We must presume that the Legislature intends an entire statute to be effective and that a just and reasonable result is intended.").

Second, when the Legislature intends to immunize TWIA from liability, the Legislature does so plainly. *See, e.g.*, TEX. INS. CODE §§ 2210.007 (stating TWIA "is not liable" for certain actions), 2210.572 (stating—with respect to policies issued 60 days after its effective date of September 28, 2011—TWIA "may not be held liable" for certain damages). The court should not interpret the Legislature's

commands regarding TWIA's "use [of] the net gain from operations" as a directive that TWIA "is not liable" for chapter 541 claims. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

Third, TWIA fails to address the necessary question that its argument raises: if TWIA is already immune from all liability under chapter 541, why did the Legislature enact sections 2210.572, 2210.575, and 2210.576 (establishing limitations on recovery)?  The Legislature's acts are not meaningless, and TWIA can be liable for League City's pre-2011 Chapter 541 damage claims.

Fourth, there is no proof that TWIA lacks "capital or surplus funds."  Texas Insurance Code section 541.454(a)(1) provides that "civil penalties, premium refunds, judgments, compensatory judgments, individual recoveries, orders, class action awards, costs, damages, or attorney's fees assessed or awarded" under Chapter 541 "may be paid only from the capital or surplus funds of the offending insurer."  TEX. INS. CODE § 541.454(a)(1).  TWIA has not provided any factual support or evidence for its contention that it does not maintain a surplus.

TWIA turns to Texas Insurance Code section 2210.452(c) for its argument that "it does not have a surplus."  But here is what section 2210.452(c) states:

> At the end of each calendar year or policy year, the association shall use the net gain from operations of the association, including all

premium and other revenue of the association in excess of incurred losses, operating expenses, public security obligations, and public security administrative expenses, to make payments to the trust fund, to procure reinsurance, or to make payments to the trust fund and to procure reinsurance.

TEX. INS. CODE § 2210.452(c).

Section 2210.452(c) does not even use the word "surplus." It only addresses "net gain from operations" as the amount to be paid into the trust fund or to be paid for reinsurance. It does not define or specify that "operations" have to exclude losses in the form of liability as a result of poor adjustment of claims under policies issued prior to September 28, 2011. Moreover, it requires only that TWIA use any net gain from operations for payments to the trust fund or for reinsurance at "the end of each calendar year or policy year." Nothing prohibits TWIA from maintaining a "surplus" throughout the year from which it would be able to pay a jury award of damages under Chapter 541.

Accordingly, the trial court could not disregard the jury's findings that:

- TWIA failed to affirm or deny coverage within a reasonable time;

- TWIA's failure to affirm or deny coverage within a reasonable time was an unfair or deceptive act or practice; and

- TWIA's unfair or deceptive act or practice caused damages to League City in the amount of $105,778.00.

CR296-98.

47367_1                                       41

### E. League City's extra-contractual claims are not barred by limitations.

TWIA bore the burden to plead, prove, and secure findings to sustain its limitations defense. *Cooke v. Morrison*, 404 S.W.3d 100, 113 (Tex. App.—Houston [1st Dist.] 2013, no pet.). This burden included establishing when League City's cause of action accrued. *Id.*

TWIA did not request a jury question on its limitations defense, even though the trial court advised TWIA that a fact issue existed. RR20:26-27. As the trial court ruled, the September 2009 email from TWIA's adjuster does not conclusively establish TWIA's limitations defense. *Id.*; *see* RR29:506. The email does not "den[y] League City's claims beyond the amount it had already agreed to pay on September 21, 2009." *Compare* CR381 *and* RR29:506. The email forwards "the *current* claim summary" with "the *current* total claim amount for each of the locations." RR29:506 (emphasis added). It advises "that there may be some claim issues that have not yet been submitted by your administrators, but would be considered for coverage . . . ." *Id.* And it directs League City to "submit all future claim documentation through your current agent who will forward to TWIA." *Id.* The adjuster's email does not establish League City's claim has been concluded. RR13:69. While the email identifies certain locations for which there is "NO COV," League City has not sought to recover damages associated with any of those locations.

42

Moreover, TWIA's corporate representative was adamant that League City's claim remained opened after September 2009. RR7:233-34, 249; 9:62. "[T]he claim itself is still open." RR9:65. TWIA made a supplemental payment on May 13, 2010, and the claim remained open at least through September 2010. RR9:65-71; 12:175-76; 29:528-29. The claim was perhaps closed at some point after September 2010, but even then the claim was reopened when the City requested an extension, and TWIA made another supplemental payment in October 2011. RR9:75-76, 80-81; *see* RR29:519, 527 (explaining "final adjustment of your claim"). League City filed suit three months later. CR7.

TWIA did not conclusively establish that League City's claim was denied or closed more than two years before January 17, 2012. *See* CR7. TWIA waived its limitations defense by not obtaining the necessary finding. TEX. R. CIV. P. 279; *Prestige Ford Garland Ltd. P'ship v. Morales*, 336 S.W.3d 833, 836 (Tex. App.—Dallas 2011, no pet.).

## IV. If a New Trial Is Not Granted, League City Is Entitled to Rendition of Judgment on Its Good Faith and Fair Dealing Claim.

Should a new trial not be granted, League City also is entitled to judgment on its good faith and fair dealing claim. *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 283 (Tex. 1994).

TWIA's assertion that the good faith and fair dealing claim fails once the breach of contract claim is rejected, CR372, is wrong. TWIA is not entitled to rendition on League City's contract claim. *See* Section II. This is not a case in which TWIA denied a claim that is not covered; the jury found that TWIA breached the policy. *See* CR289; Section III.B.

TWIA owes League City a duty of good faith and fair dealing as a matter of law. *Chitsey v. Nat'l Lloyds Ins. Co.*, 738 S.W.2d 641, 643 & n.1 (Tex. 1987); *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). League City's claim does not sound only in contract. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 & n.1 (Tex. 1991). Furthermore, League City is entitled to recover all damages proximately caused by TWIA's breach of its duty, including policy benefits wrongfully withheld. *Waite Hill*, 959 S.W.2d at 184-85; *Chitsey*, 738 S.W.2d at 643-44; *Vail*, 754 S.W.2d at 136.

There is at least some evidence that TWIA failed to comply with its duty of good faith and fair dealing. *See* pp. 1-5 above. TWIA has never addressed the evidence supporting the jury's finding, but instead argued that the jury's answers to other questions in the charge prove it had a reasonable basis for failing to reasonably investigate the claim and for failing to attempt to effectuate a prompt, fair, and equitable settlement once its liability had become reasonably clear. CR372-73. There are several problems with TWIA's argument.

First, absent a (preserved) complaint that two jury findings conflict, "there is no basis for reconciling the jury's responses, and the court must give effect to each finding in the ordinary fashion." *Springs Window Fashions Div., Inc. v. Blind Maker, Inc.*, 184 S.W.3d 840, 867 (Tex. App.—Austin 2006, pet. granted, judgm't vacated w.r.m.). TWIA did not object to any allegedly conflicting jury findings before the jury was discharged, so there is no basis for TWIA's speculation about what the jury intended by its other answers. *Id.*

Second, the duty of good faith and fair dealing "emanates not from the terms of the insurance contract, but from the obligation imposed in law[.]" *Viles*, 788 S.W.2d at 567. Consequently, League City's purported failure to comply with the insurance policy does not conclusively defeat its ability to recover. *Id.* (holding that the insureds "were not required to submit to the jury questions as to compliance with the proof of loss condition contained in their homeowner's policies, or alternatively a waiver thereof, as a prerequisite to maintaining a successful suit for breach of the duty of good faith and fair dealing").

Third, the jury findings on TWIA's defenses are immaterial and unsupported for the reasons discussed in section V. Thus, those jury findings cannot be a basis for disregarding the jury's unrelated findings that TWIA breached its duty of good faith and fair dealing.

There is also at least some evidence that had TWIA conducted a reasonable investigation and attempted in good faith to effectuate a prompt, fair, and equitable settlement of League City's claim, TWIA should and would have paid League City an additional $105,778 for its windstorm damages. CR304. TWIA's corporate representative analyzed the appraisers' estimates, the adjuster's file, all the photographs, and the engineering reports; applied all the policy terms and conditions; deducted prior payments and deductibles; and determined TWIA owed an additional $344,841.75 for League City's Hurricane Ike damage. RR7:166-67; 8:109-16; 10:138-40; 27:256-63. The jury "absolutely" was capable of conducting the same analysis and arriving at its own (smaller) number. RR8:116.

Finally, League City's claim is not barred by limitations. *See* Section III.E.

## V. The Jury Findings on TWIA's Alleged Defenses Do Not Support Rendition of a Take Nothing Judgment.

In seeking a take-nothing judgment, TWIA argued that the jury findings on its alleged defenses entirely or partially excused TWIA's performance under the insurance policy and defeated League City's extra-contractual claims. CR374-77. But TWIA did not obtain a jury finding on excuse; TWIA did not conclusively establish that the City's alleged breach occurred first; and TWIA elected to treat the contract as continuing. The jury findings on TWIA's defenses do not support rendition of judgment against League City.

## A. TWIA elected to treat the contract as continuing.

It is certainly true that a prior material breach by one party can excuse another party from performing under a contract. *Long Trusts v. Griffin*, 222 S.W.3d 412, 415 (Tex. 2006). It is equally true, however, that "[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part." *Id.* (citation omitted); *see Henry v. Masson*, 333 S.W.3d 825, 842 n.3 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

"If after a party breaches a contract, the other party continues to insist on performance on the part of the party in default, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties." *Houston Belt & Terminal Ry. Co. v. J. Weingarten, Inc.*, 421 S.W.2d 431, 435 (Tex. Civ. App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.). "The non-breaching party must thus elect between two courses of action—continuing performance under the contract or ceasing to perform." *Henry*, 333 S.W.3d at 840; *see Man Indus. (India) Ltd. v. Midcontinent Express Pipeline, LLC*, 407 S.W.3d 342, 368 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). "Seeking to benefit from the contract after the breach operates as a conclusive choice depriving the non-breaching party of an excuse for his own non-performance." *Henry*, 333 S.W.3d at 841.

Assuming, for the moment, that League City materially breached the insurance policy by failing to provide TWIA notice and/or repair receipts, TWIA indisputably treated the contract as continuing long after any purported breach.

League City submitted its First Notice of Loss—which reported "wind damage to various locations"—on September 15, 2008, two days after Ike. RR27:211. After receiving League City's notice, TWIA did not advise League City that its notice was insufficient, did not deny the claim, and did not terminate the policy. RR14:40, 43-44; 16:151. Instead, TWIA acknowledged "the claim" in writing, assigned a single claim number, identified 140 "Insured Propert[ies]" under the policy, and described the loss as "Hurricane Ike Damage." RR8:168; 27:212-14. TWIA then hired an adjuster "to go out and adjust the loss." RR8:166, 176.

Thereafter, TWIA continued to demand performance: requesting and obtaining inspections, meetings, receipts, and documentation from League City— all without any complaint about notice or any reservation of rights. RR8:167, 176, 178-79, 222; 12:24-27, 30, 35-37, 55, 81, 97-99, 117-18; 13:90-92, 108, 125-26, 133,156-58, 207-08, 210-11, 216; 14:51-53, 83, 96-97; 27:161-84. TWIA waived proof of loss, in accordance with the policy. RR8:148-49; 10:206-07. And TWIA made payments to League City—taking advantage of the policy's terms and conditions—in 2009, 2010, and 2011. RR8:57-58; 9:46-47; 52:772-74.

Later, despite TWIA's contention that League City had failed to comply "with policy conditions 4.a [League City's duties after loss], 10 [the appraisal provision] and 12 [dispute resolution]," TWIA demanded League City's participation in an appraisal. RR52:779-82; 9:94-97. An appraisal was not mandatory under the policy, and TWIA did not have to seek appraisal; but it did. RR27:157; 52:781-82. At the same time, TWIA "continue[d] to request that [League City] provide us with prompt written notice, include a description of the property involved, and all pertinent records and documents we have requested . . . ." RR52:781-82. And TWIA insisted: "[W]e do not intend to waive any terms, exclusions or conditions contained in the policy[.]" RR52:782.

TWIA treated the contract as continuing even after League City filed suit and even after TWIA believed League City was in breach, and by doing so, TWIA required that League City continue to perform under the contract. *Id.* League City was required to spend over $150,000 in appraisal fees and expenses. CR552.

Assuming League City's alleged breaches—of failing to provide notice and receipts—were prior and material, TWIA was "entitled to terminate the agreement and sue for breach." *Long Trusts*, 222 S.W.3d at 415. "But '[a] party who elects to treat a contract as continuing deprives himself of any excuse for ceasing performance on his own part.'" *Id.* By continually demanding performance from League City—including League City's participation in an appraisal under the

policy—TWIA deprived itself of any excuse for its own non-performance. *Henry*, 333 S.W.3d at 841; *Man Indus.*, 407 S.W.3d at 368; *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 757-58 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

There is no special rule for insurance policies that allows TWIA to continue to demand performance from League City while avoiding its own contractual obligations. "Insurance policies are contracts, and as such are subject to rules applicable to contracts generally." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). TWIA seeks to enforce a "fundamental principle of contract law"—not just insurance law. *Id.*; *see also Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 768 (Tex. 2014) ("In *Hernandez* we applied the contract principle that only when one party commits a material breach is the other party's performance excused. That principle was the basis for our decisions in *PAJ*, *Prodigy*, and *Lennar*.") (citation omitted).

A corollary to that fundamental principle of contract law is "another equally fundamental principle"—"when one party materially breaches a contract, the nonbreaching party must choose whether to treat the contract as terminated or as continuing." *Man Indus.*, 407 S.W.3d at 368.

The supreme court had no reason to reach the fundamental principle at issue in this case when it decided *Hernandez* or *PAJ, Inc. v. Hanover Insurance Co.*, 243 S.W.3d 630 (Tex. 2008). The insurers in *PAJ* and *Hernandez* each elected to stand on the alleged breach and denied the insured's claim. *See PAJ*, 243 S.W.3d at 631; *Hernandez*, 875 S.W.2d at 692. The insurers did not accept the claim, investigate, make payments, and demand appraisal under the policy. *Id.* So the supreme court was not faced with an insurer who elected to treat the contract as continuing after the insured's alleged breach had occurred. *Id.*

Nothing in the supreme court's opinion in *PAJ* (or in any other case) suggests a willingness to enforce the rule that a prior material breach by one contracting party excuses performance by the opposite party, while eschewing the equivalent rule that one who elects to treat the contract as continuing deprives himself of any excuse for ceasing his own performance. *See Long Trusts*, 222 S.W.3d at 415.

In this case, because TWIA elected to treat the contract as continuing, any previous breach by League City constitutes "no excuse for nonperformance" on the part of TWIA as a matter of law. *Henry*, 333 S.W.3d at 840; *see Gupta*, 140 S.W.3d at 756. Consequently, the jury's answers to questions 18 through 21 should be disregarded as immaterial. Judgment should be rendered in favor of League City or a new trial should be granted on all issues.

**B. The questions on notice and receipts were improperly submitted.**

If TWIA's excuse defense is not defeated as a matter of law by TWIA's continuing performance, League City is entitled to rendition of judgment or a new trial because TWIA failed to obtain the findings necessary to establish its defense, and League City objected to TWIA's failure to obtain the requisite findings. *See* RR22:12-14, 16-18.

"[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other party is an affirmative defense." *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 58 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (citation omitted). In order to rely upon the defense, TWIA was required to secure all necessary findings. *See AMS Constr. Co. v. K.H.K. Scaffolding Houston, Inc.*, 357 S.W.3d 30, 43 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). TWIA failed to do so.

In response to question 1, the jury found that TWIA failed to comply with the insurance policy. CR289. As the record reflects, TWIA failed to request a jury question asking whether TWIA's failure to comply with the insurance policy was excused. CR289-322; *cf*. TEXAS PATTERN JURY CHARGES—BUS., CONSUMER, INS. & EMPLOYMENT PJC 101.21, 101.59 (2014) (identifying the "controlling question" when insurer raises excuse defense). League City therefore objected to the charge because it failed to ask the jury the controlling excuse question. RR22:13, 17.

League City also objected to questions 18 and 20 on the ground that they did not determine whether League City's alleged failure to give notice or provide receipts was a prior breach. *Id.* Although not its burden, League City also requested a question on excuse. CR333; RR22:23. The trial court overruled League City's objections and refused its tendered question. CR333, RR22:14, 18.

Despite TWIA's assertion that the jury's findings in response to questions 18 through 21 excuse TWIA's failure to comply with the insurance policy in whole or in part, nothing in question 18 or in question 20 (which asked whether League City failed to provide notice and failed to provide receipts) was tied in any way to question 1 (which asked whether TWIA failed to comply with the insurance policy). RR22:13, 17. Neither question 18 nor 20 identified the breach by TWIA that League City's failures were supposed to excuse. CR311, 316. And neither question required the jury to determine whether League City's failure to provide notice or receipts occurred prior to TWIA's own failure to comply with the policy. *Id.*

It is not undisputed that League City's failure to provide notice or receipts occurred *before* TWIA's failure to timely and properly investigate, adjust, estimate and pay for League City's losses. Post-trial, TWIA argued that League City's failure to give notice occurred on September 15, 2008, when League City

submitted its First Notice of Loss. CR806-07. But that was not the notice argument TWIA made at trial.[4]

At trial, TWIA's corporate representative swore that he was *not* criticizing League City for failing to identify every potential loss location on its First Notice of Loss. RR10:189. A TWIA claims supervisor testified that League City's First Notice of Claim was typical of the notices TWIA received, and that it was sufficient to put TWIA on notice. RR14:43-44.

TWIA's corporate representative opined that "the duty to provide notice of a claim" included the obligation to provide on-going information on additional damage, hidden damage, and additional costs. RR8:231; 9:28-30. And he criticized League City because "[t]here was no contact from the City at all regarding any kind of damage, additional damage that wasn't addressed." RR9:37-38; *see also* RR9:67-68, 70. TWIA "had no indication that there were ongoing problems with the roof [on City Hall, the municipal court, or the library]. We had no indication that they required replacement. No contact whatsoever." RR8:216.

In questioning City employees, TWIA similarly emphasized its theory that the City failed to provide written notice and repair receipts as the City repaired leaks in 2009. *E.g.*, RR15:123-26, 131-33.

---

[4] If the City's failure to provide notice occurred on September 15, 2008 when it provided its First Notice of Loss, then TWIA indisputably elected to treat the policy as continuing and cannot use the City's alleged breach as an excuse for its own non-performance. *See* section V.A.

TWIA also repeatedly complained that League City did not provide notice before filing suit in 2012. *E.g.*, RR9:86-87, 94-97; 10:88, 90-91, 117, 136-37. According to TWIA, failing to give pre-suit notice "goes back to the very conditions that we talked about yesterday about providing notice of the claim, documenting loss, et cetera[.]" RR9:95.

TWIA emphasized its contention that League City had an ongoing duty to provide notice and receipts in closing argument:

- "Not one witness has stood up here and said, 'Here's a covered cost that we submitted, we identified, that we brought it to somebody's attention hasn't been paid. Not one receipt that we submitted that wasn't paid.'" RR22:94.

- "Not once did they pick up the phone and say, 'We've got a problem.'" RR22:95.

- "We don't have a single new receipt, a single maintenance record for all those repairs you saw have been made." RR22:95.

- "[T]hey sued without making any notice." RR22:95.

- "The lawsuit that was filed, instead of picking up the phone or sending an email or writing a letter…which is what all of you guys would have done if this had been your home, your office, your facility…." RR22:97.

- "What we're saying is Texas Windstorm didn't have a chance to address those damages because either, A, when they said they were giving us receipts they didn't give them or, B, when the damages were found, nobody told us. And all we ask for, all the policy requires is notice. And then we'll react. RR22:101.

- "[T]hat's not fair to ask Texas Windstorm to pay for those. They weren't even told about them. Make them go make a proper claim and then we'll see." RR22:103.

- "If they didn't say anything then, how fair is it to come in and say it now after you filed a lawsuit, you waited over three and a half years to raise your issues? And more importantly, when we talk about that, is it timely? I mean, is it timely? Is that prompt notice, written notice of a claim as required by an insurance policy that you've heard about?" RR22:113.

While TWIA emphasized League City's on-going failures to provide notice and receipts *in the years following* Ike and before suit was filed, the jury heard a great deal of evidence regarding TWIA's failure to investigate and adjust the City's claim *immediately* after Ike.

A TWIA claims supervisor testified that "the purpose of sending an adjuster to the property is that they're qualified to inspect, note the damages, figure out what's covered and not covered, and generate an estimate for the cost of repairs or replacement." RR21:203-04. TWIA acknowledged that it was obligated to investigate anything the insured reports. RR10:91. Nonetheless, while the spreadsheets provided to TWIA document "obvious roof leak[s]" to various structures, the adjuster never got on the roofs, inspected the damage, or estimated the losses. RR12:188-90; 13:12-15, 29-30, 67; 14:157, 162-63. By August 4, 2009, there was no excuse and no lack of information that kept the adjuster from completing the field portion of League City's claim. RR21:202.

While it is fine for the adjuster to request information and have the City fill out spreadsheets, that does not replace the adjuster's obligation to personally inspect and scope the loss and estimate the cost of repair. RR16:70-71, 74; 21:198-99. Paying on receipts did not "excuse[] all of what had transpired over the course of the claim handling in the first year before [the adjuster] wrote any estimates." RR16:138. If the adjuster had prepared estimates when he initially went out to the League City structures, the lawsuit likely would never have occurred. RR16:136; 15:191-92; 14:162-63.

There is conflicting testimony about the timing of TWIA's and League City's alleged failures to comply with the policy. Yet TWIA refused to ask the jury whether TWIA's failure to comply was excused, or whether League City's alleged failures to comply occurred prior to TWIA's failure to comply. CR286-324, 333; RR22:12-14, 16-18. In light of the evidence, the trial court could not deem a finding on these contested issues in TWIA's favor. TEX. R. CIV. P. 279.

A question or an element omitted from the charge by the party with the burden of proof cannot be deemed in that party's favor when the other party objected. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *Winfield v. Renfro*, 821 S.W.2d 640, 657 (Tex. App.—Houston [1st Dist.] 1991, writ denied). "[W]hen an issue is submitted with a missing element, and the party who did not have the burden of proof objects, the appellate court

must reverse and render, not reverse and remand for a new trial." *Winfield*, 821 S.W.2d at 657; *see Payne*, 838 S.W.2d at 241.

Only a prior material breach could excuse TWIA's failure to comply with the insurance policy. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004); *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 689 (Tex. 1981). Because League City objected to TWIA's failure to obtain a finding on excuse or even a finding that the failures inquired about in questions 18 and 20 occurred prior to TWIA's own failure to comply with the insurance policy, RR22:13, 17, League City is entitled to rendition of judgment in its favor. *Payne*, 838 S.W.2d at 241; *Winfield*, 821 S.W.2d at 657. At a minimum the defective submission requires a new trial.

**C.     League City complied with the policy's notice requirement as a matter of law, or TWIA waived the notice requirement as a matter of law.**

Following Ike, League City provided written notice on TWIA's "First Notice of Loss-Claims Reporting Form" on September 15, 2008, two days after the storm. *See* RR27:211. The City's written notice identifies the insured, policy number, policy period, and date of loss, and it describes the losses as "Wind Damage to Various Locations." *Id*.

League City's notice satisfied the policy requirement as a matter of law—as TWIA determined at the time League City's performance under the policy was required. RR14:43-44; 11:61-63; 16:151; 10:188-90. TWIA voiced no complaint or criticism about the notice. RR16:151; 14:43-44; 10:188-89. TWIA accepted and acknowledged League City's notice with its "Claim Notice Acknowledgment and Assignment," in which it described the City's loss as "Hurricane Ike Damage" and listed all 140 items covered under the policy. RR10:185, 189-90; 27:212. TWIA opened a claim with a single claim number, assigned an adjuster, assigned a supervisor, and set an initial loss reserve. RR10:189-90; 11:61-63; 14:43-44; 27:212; 52:174. Ultimately, TWIA "received and accepted" the adjuster's reports and acknowledged covered damage to the Library, Gazebo, City Hall, Council Chambers, Council Chambers CTS, Civic Center, Community Center, Museum Storage Bldg., and Fire Station 2. RR29:498.

In closing, TWIA did not dispute that it received proper notice regarding these items:

> I think the evidence shows there are eight items on the appraisal award where they did give proper notice. And there's a couple of pages and you will see it when you go through. But it's a library, the park gazebo, it's the ones that you see in Exhibit 16. It's the ones that we've been looking at. It's the ones we paid money on. It's the ones that we received claim information on. The one we received receipts and work orders on. . . . You compare Exhibit 16 with Question 18 and you will know how to answer it. It's the covered items that were reported.

RR22:151-52.

League City satisfied the policy's notice requirement as a matter of law and the jury's contrary findings in answer to question 18 are supported by no evidence. Alternatively, TWIA waived compliance with the policy's notice requirement as a matter of law. *See Jernigan v. Langley*, 111 S.W.3d 153, 156-57 (Tex. 2003) (holding waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right" and presents a question of law "when the surrounding facts and circumstances are undisputed"). At a minimum, the jury's findings are against the great weight and overwhelming preponderance of the evidence and require a new trial.

### D. The jury's answers to question 20 support rendition of judgment in League City's favor.

In response to question 20, the jury determined that League City did *not* fail to provide TWIA with an accurate record of repair expenses for the Library, Pool pump building, Park gazebo, City Hall, Council Chambers, Civic Center, Community Center, Museum Storage Bldg., and Fire Station 2. CR316-17. TWIA did not ask the trial court to disregard these findings, CR377, and the trial court did not disregard them. CR678-79.

The jury findings as to these nine items—coupled with the evidence proving TWIA's receipt or waiver of notice concerning these items—requires rendition of judgment in favor of League City. The jury's liability and damage awards are

47367_1                                60

supported by the evidence even if the Court considers only TWIA's actions with respect to these policy items.

## VI. If a New Trial Is Not Granted, League City Is Entitled to Recover Attorney's Fees.

Because League City is entitled to recover on its breach of contract and Insurance Code claims, the City is entitled to recover its attorney's fees. TEX. CIV. PRAC. & REM. CODE § 38.001; TEX. INS. CODE § 541.152.

The jury's award of $770,561 in fees for representation in the trial court is amply supported by the testimony of Randal Cashiola. RR19:160-210. He discussed the *Arthur Anderson* factors, the necessary work done in the case, the qualifications and rates of the attorneys and paralegals, and required segregation. *Id*. He suggested a reasonable award through trial would be $1,464,065.90. RR19:210. The jury awarded only a little over half that amount. CR309.

The jury's answers to subparts (b) through (e) of Question No. 17 finding that $0 is a reasonable fee for the necessary services of League City's attorneys for an appeal to the court of appeals and for an appeal to the Supreme Court of Texas should be disregarded. Mr. Cashiola established that the reasonable and necessary fee for an appeal to the court of appeals was $50,000. RR19:211-12. Mr. Cashiola further established that the reasonable and necessary fee for an appeal to the Supreme Court of Texas was $35,000. RR19:215. Mr. Cashiola's testimony was uncontroverted.

The Court may disregard a jury's zero award of attorney's fees and substitute an affirmative finding if the evidence conclusively establishes the affirmative finding. *See Brown v. Bank of Galveston*, 963 S.W.2d 511, 515 (Tex. 1998), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) ("We also hold that the court of appeals properly awarded attorney's fees because the [plaintiff] established the amount. The [plaintiff] offered uncontradicted testimony on the amount of its attorney's fees. [Defendant] had the means and opportunity of disproving the testimony and failed to do so."); *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (holding that a court may award attorneys' fees as a matter of law when the testimony on fees "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon"). That is the situation here.

Alternatively, if the amount of reasonable and necessary appellate attorney's fees is not established as a matter of law, the Court should disregard the zero findings and grant a new trial on the appellate attorney's fee issues. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548-49 (Tex. 2009). The jury's $0 answers are supported by legally or factually insufficient evidence. The Court should therefore grant a new trial. *Id.* When, as here, "attorney's fees are proper under section 38.001(8), the trial court has no discretion to deny them." *Id.* at 547.

## PRAYER

The trial court's judgment should be reversed, and a new trial granted on all issues. Alternatively, judgment should be rendered in favor of League City. If appellate attorney's fees are not established as a matter of law, a new trial should be granted on that issue. Appellant, League City, also respectfully prays for all relief to which it is entitled.

Respectfully Submitted,

THE MOSTYN LAW FIRM

Gregory F. Cox
State Bar No. 00793561
gfcox@mostynlaw.com
6280 Delaware Street
Beaumont, Texas 77706
409.832.2777–telephone
409.832.2703–facsimile

Rene M. Sigman
State Bar No. 24037492
rmsigman@mostynlaw.com
3810 W. Alabama
Houston, Texas 77027
713.861.6616–telephone
713.861.8084–facsimile

HOGAN & HOGAN

By:     */s/ Jennifer Bruch Hogan*
           Jennifer Bruch Hogan
           State Bar No. 03239100
           jhogan@hoganfirm.com
           Richard P. Hogan, Jr.
           State Bar No. 09802010
           rhogan@hoganfirm.com
           James C. Marrow
           State Bar No. 24013103
           jmarrow@hoganfirm.com
711 Louisiana, Suite 500
Houston, Texas 77002-2721
713.222.8800–telephone
713.222.8810–facsimile

CASHIOLA & BEAN

Randal Cashiola
State Bar No. 03966802
rcashiola@cashiolabeanlaw.com
2090 Broadway Street, Suite A
Beaumont, Texas 77701-1944
409.813.1443–telephone
409.813.1467–facsimile

Attorneys for Appellant League City

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of TEX. R. APP. 9.4(i)(2)(B) because this brief contains 14,559 words, excluding the parts of the brief exempted by TEX. R. APP. 9.4(i)(1).

2.      This brief complies with the typeface requirements of TEX. R. APP. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes.

*/s/ Jennifer Bruch Hogan*
Jennifer Bruch Hogan
Dated: August 7, 2015

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the above and foregoing was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered; a true and correct copy of this document was forwarded to all counsel of record not registered with an Electronic Filing Service Provider and to all other parties as follows:

Counsel for Appellee:

Dale Wainwright
BRACEWELL & GIULIANI LLP
111 Congress Avenue Suite 2300
Austin, Texas 78701-4061
*Via TexFile*

Andrew T. McKinney IV
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056
*Via TexFile*

James R. Old, Jr.
JAY OLD & ASSOCIATES, PLLC
3560 Delaware, Suite 308
Beaumont, Texas 77706
*Via TexFile*

*/s/ Jennifer Bruch Hogan*
Jennifer Bruch Hogan
Dated: August 7, 2015

# Tab A

Charge of the Court
(CR286-326)

JOHN D. KINARD
CLERK DISTRICT COURT
FILED

MAY 2 1 2014  11:29 AM

CAUSE NO. 12CV0053

GALVESTON COUNTY, TEXAS

BY_____
DEPUTY

| LEAGUE CITY, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | GALVESTON COUNTY, TEXAS |
| | § | |
| TEXAS WINDSTORM INSURANCE | § | |
| ASSOCIATION, | § | |
| Defendant. | § | 10TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations; but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.  Do not let bias, prejudice, or sympathy play any part in your decision.

2.  Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.  You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.  If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.  All the questions and answers are important. No one should say that any question or answer is not important.

6.  Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise

7.  The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

8.  A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

9.  Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

10. Do not answer questions by drawing straws or by any method of chance.

11. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

12. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

13. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

**QUESTION NO. 1**

Did Texas Windstorm Insurance Association fail to comply with the insurance policy?

Answer "Yes" or "No"

Answer: _____Yes_____

# QUESTION NO. 2

Did Hurricane Ike cause the amount of windstorm damage set forth in the appraisal award and identified below?

Windstorm damage means direct physical loss or damage caused by wind or caused by or resulting from rain that enters a building or structure through a wind-created opening.

Answer "Yes" or "No" as to each Item.

| STRUCTURE (APPRAISAL ITEM #) | APPRAISAL AMOUNT OF DAMAGE | ANSWER "YES" or "NO." |
|---|---|---|
| Library (#1) | $294,088.34 | No |
| Pool pump bldg (#5) | $7,914.60 | No |
| Park gazebo (#7) | $10,794.12 | No |
| Fuel island canopy (#10) | $3,646.03 | No |
| Open equipment shelter (#11) | $6,112.68 | No |
| Parks Dept. Bldg (#22) | $24,956.80 | No |
| City Hall (#26) | $1,598,524.85 | No |
| Council Chambers (#28) | $91,123.06 | No |
| Civic Center (#30) | $351,782.12 | No |
| Community Center (#34) | $125,997.03 | No |
| Storage Bldg (#36) | $43,437.51 | No |
| 2d Street Fire Station (#39) | $6,011.82 | No |
| Newport Fire Station (#41) | $6,292.00 | No |

| | | |
|---|---|---|
| Vehicle Maintenance (#83) | $67,911.15 | No |
| Building Streets and Drainage/ Traffic Control Department (#84) | $145,900.55 | No |
| FM 518 Pump House (#119) | $2,814.02 | No |
| Plant Office (#123) | $35,162.30 | No |
| Wisconsin Ave. Control Bldg (#127) | $27,976.85 | No |
| Blower Bldg (#129) | $29,794.23 | No |
| Dewatering Bldg (#131) | $16,036.83 | No |
| Bay Area Blvd. Pump House (#136) | $1,041.47 | No |
| Bay Area Blvd. Controls Bldg (#137) | $6,583.64 | No |
| Chlorine Bldg (#139) | $3,263.58 | No |
| Calder Rd. Pump House (#142) | $5,418.55 | No |
| Walker St. Pump House (#157) | $3,023.70 | No |
| Webster Pump Station (#163) | $38,006.39 | No |
| Museum Office (#175) | $23,169.80 | No |

| | | |
|---|---|---|
| Museum Storage Bldg (#176) | $22,975.72 | No |
| Museum Garage (#177) | $24,609.39 | No |
| Hobbs Rd. Fire Station #2 (#179) | $109,095.08 | No |

*If you answered "No" to any subpart of Question No. 2, then, for the same items, and only for those items, answer the following question as to that item only. Otherwise, do not answer the following question.*

## QUESTION NO. 3

What amount of the appraisal damage award is for damage caused by windstorm?

Answer with a dollar amount for each appraisal item number for which you answered "No" in response to Question No. 2. Do not subtract any amount to account for deductibles or prior payments. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

| STRUCTURE (APPRAISAL ITEM #) | APPRAISAL AMOUNT OF DAMAGE | AMOUNT OF DAMAGE CAUSED BY WINDSTORM |
|---|---|---|
| Library (#1) | $294,088.34 | $ $6,960.45 |
| Pool pump bldg (#5) | $7,914.60 | $ 0 |
| Park gazebo (#7) | $10,794.12 | $ $5,225.00 |
| Fuel island canopy (#10) | $3,646.03 | $ 0 |
| Open equipment shelter (#11) | $6,112.68 | $ 0 |
| Parks Dept. Bldg (#22) | $24,956.80 | $ 0 |
| City Hall (#26) | $1,598,524.85 | $ $800,000.00 |
| Council Chambers (#28) | $91,123.06 | $ $4,707.00 |
| Civic Center (#30) | $351,782.12 | $ $8,486.00 |
| Community Center (#34) | $125,997.03 | $ $8,376.69 |
| Storage Bldg (#36) | $43,437.51 | $ 0 |

| | | |
|---|---|---|
| 2d Street Fire Station (#39) | $6,011.82 | $ $2,500.00 |
| Newport Fire Station (#41) | $6,292.00 | $ 0 |
| Vehicle Maintenance (#83) | $67,911.15 | $ $1,000.00 |
| Building Streets and Drainage/ Traffic Control Department (#84) | $145,900.55 | $ 0 |
| Plant Office (#123) | $35,162.30 | $ 0 |
| Wisconsin Ave. Control Bldg (#127) | $27,976.85 | $ 0 |
| Blower Bldg (#129) | $29,794.23 | $ 0 |
| Dewatering Bldg (#131) | $16,036.83 | $ 0 |
| Bay Area Blvd. Pump House (#136) | $1,041.47 | $ 0 |
| Bay Area Blvd. Controls Bldg (#137) | $6,583.64 | $ 0 |
| Chlorine Bldg (#139) | $3,263.58 | $ 0 |
| Calder Rd. Pump House (#142) | $5,418.55 | $ 0 |

| | | |
|---|---|---|
| Walker St. Pump House (#157) | $3,023.70 | $ ⊘ |
| Webster Pump Station (#163) | $38,006.39 | $ ⊘ |
| Museum Office (#175) | $23,169.80 | $ ⊘ |
| Museum Storage Bldg (#176) | $22,975.72 | $ 3,730.87 |
| Museum Garage (#177) | $24,609.39 | $ ⊘ |
| Hobbs Rd. Fire Station #2 (#179) | $109,095.08 | $ 29,991.29 |

## QUESTION NO. 4

Did Texas Windstorm Insurance Association engage in any unfair or deceptive act or practice that caused damages to League City?

Answer "Yes" or "No" as to each subpart.

"Unfair or deceptive act or practice" means any one or more of the following:

a.     Refusing to pay a claim without conducting a reasonable investigation of the claim;

Answer:     _____No_____

b.     Misrepresenting to League City a material fact or policy provision relating to the coverage at issue;

Answer:     _____No_____

c.     Failing to affirm or deny coverage within a reasonable time;

Answer:     _____Yes_____

d.     Failing to submit a reservation of rights within a reasonable time;

Answer:     _____No_____

e.     Failing to promptly provide to League City a reasonable explanation of the factual and legal basis in the policy for the insurer's denial of a claim;

Answer:     _____No_____

f.     Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear;

Answer:     _____No_____

296

*If you answered "Yes" to any part of Question No. 4, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate League City for its actual damages, if any, that were caused by an unfair or deceptive act that you found in response to Question No. 4?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following element of damages, if any, and none other:

The difference, if any, between the amount that should have been paid by Texas Windstorm Insurance Association to League City under the policy and the amount Texas Windstorm Insurance Association paid to League City for its windstorm damages ($765,200.04).

Answer in dollars and cents for damages, if any.

Answer:     $ 105,778.00

297

*If you answered "Yes" to any subpart of Question No. 4, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 6

Did Texas Windstorm Insurance Association engage in any such conduct knowingly?

"Knowingly" means with actual awareness of the falsity, deceptiveness, or unfairness of the act or practice on which a claim for damages is based. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness.

In answering this question, consider only the conduct that you found resulted in damages to League City.

Answer "Yes" or "No" as to each subpart.

a. Refusing to pay a claim without conducting a reasonable investigation of the claim;

Answer: ___No___

b. Misrepresenting to League City a material fact or policy provision relating to the coverage at issue;

Answer: ___No___

c. Failing to affirm or deny coverage within a reasonable time;

Answer: ___Yes___

d. Failing to submit a reservation of rights within a reasonable time;

Answer: ___No___

e. Failing to promptly provide to League City a reasonable explanation of the factual and legal basis in the policy for the insurer's denial of a claim;

Answer: ___No___

f. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the insurer's liability has become reasonably clear;

Answer: ___Yes___

298

*If you have answered "Yes" to any part of Question No. 6, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 7

What sum of money, if any, in addition to actual damages, should be awarded to League City against Texas Windstorm Insurance Association because Texas Windstorm Insurance Association's conduct was committed knowingly?

Answer in dollars and cents for damages, if any:

Answer: $_____0_____._____

## QUESTION NO. 8

Did Texas Windstorm Insurance Association fail to:

(1)     acknowledge receipt of League City's Hurricane Ike claim in writing, unless Texas Windstorm Insurance Association made a record of the date, manner, and content of the acknowledgement; and

(2)     commence any investigation of the claim; and

(3)     request from League City all items, statements, and forms that the insurer reasonably believed, at that time, would be required from League City

not later than the 30th business day after Texas Windstorm Insurance Association received written notice of League City's Hurricane Ike claim?

Answer "Yes" or "No."

Answer:     _____No_____

300

**QUESTION NO. 9**

Did League City provide all items, statements, and forms reasonably required by Texas Windstorm Insurance Association in order to secure final proof of loss as to League City's claim relating to Hurricane Ike?

Answer "Yes" or "No."

Answer: _____ *No*

301

*If you answered "Yes" to Question No. 9, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 10

On what date did League City provide all items, statements, and forms reasonably required by Texas Windstorm Insurance Association in order to secure final proof of loss relating to Hurricane Ike?

Answer with a month, day, and year.

Answer: _____

# QUESTION NO. 11

Did Texas Windstorm Insurance Association fail to comply with its duty of good faith and fair dealing to League City?

An insurer fails to comply with its duty of good faith and fair dealing by:

a.      Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when Texas Windstorm Insurance Association's liability has become reasonable clear; or

b.      Refusing to pay a claim without conducting a reasonable investigation of the claim.

Answer "Yes" or "No."

Answer:        _Yes_

303

*If you answered "Yes" to Question No. 11, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 12

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate League City for its damages, if any, that were proximately caused by Texas Windstorm Insurance Association's failure to comply with its duty of good faith and fair dealing?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following element of damages, if any, and none other:

The difference, if any, between the amount that should have been paid by Texas Windstorm Insurance Association to League City under the policy and the amount Texas Windstorm Insurance Association paid to League City for its windstorm damages ($765,200.04).

Answer in dollars and cents for damages, if any.

Answer: $ 105,778.09

304

## QUESTION NO. 13

Did Texas Windstorm Insurance Association commit fraud against League City?

Fraud occurs when:

a.  a party makes a material misrepresentation, and

b.  the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

c.  the misrepresentation is made with the intention that it should be acted on by the other party, and

d.  the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means:

a.  a false statement of fact, or

b.  a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, or

c.  a statement of opinion based on a false statement of fact, or

d.  a statement of opinion that the maker knows to be false, or

e.  an expression of opinion that is false, made by one who has or purports to have special knowledge of the subject matter of the opinion.

"Special knowledge" means: knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

"Material" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.

Answer "Yes" or "No."

Answer:____ No _____

305

*If you answered "Yes" to Question No. 13, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 14

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate League City for its damages, if any, that resulted from Texas Windstorm Insurance Association's fraud?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment. Do not add any amount for interest on damages, if any.

Consider the following element of damages, if any, and none other:

The difference, if any, between the amount that should have been paid by Texas Windstorm Insurance Association to League City under the policy and the amount Texas Windstorm Insurance Association paid to League City for its windstorm damages ($765,200.04).

Answer in dollars and cents for damages, if any.

Answer:     $_____

*Answer the following question only if you unanimously answered "Yes" to Question No. 11 or to Question No. 13. Otherwise, do not answer the following question.*

*To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.*

## QUESTION NO. 15

Do you find by clear and convincing evidence that the harm to League City resulted from fraud by Texas Windstorm Insurance Association?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

Fraud occurs when:

a.   a party makes a material misrepresentation, and
b.   the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and
c.   the misrepresentation is made with the intention that it should be acted on by the other party, and
d.   the other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means:

a.   a false statement of fact, or
b.   a promise of future performance made with an intent, at the time the promise was made, not to perform as promised, or
c.   a statement of opinion based on a false statement of fact, or
d.   a statement of opinion that the maker knows to be false, or
e.   an expression of opinion that is false, made by one who has or purports to have special knowledge of the subject matter of the opinion.

"Material" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.

"Special knowledge" means knowledge or information superior to that possessed by the other party and to which the other party did not have equal access.

Answer "Yes" or "No."

Answer: _____

307

*Answer the following question only if you unanimously answered "Yes" to Question No. 15. Otherwise, do not answer the following question.*

*You must unanimously agree on the amount of any award of exemplary damages.*

## QUESTION NO. 16

What sum of money, if any, if now paid in cash, should be assessed against Texas Windstorm Insurance Association and awarded to League City as exemplary damages, if any, for the conduct you found in response to Question No. 15?

"Exemplary damages" means an amount that you may, in your discretion, award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are:

a.   The nature of the wrong;

b.   The character of the conduct involved;

c.   The degree of culpability of Texas Windstorm Insurance Association;

d.   The situation and sensibilities of the parties;

e.   The extent to which the conduct in question ~~offers~~ *OFFENDS* a public sense of justice and propriety.

Answer in dollars and cents for damages, if any:

Answer: $_____

*If you answered "Yes" to Question No. 1, or to any part of Question No.4, or to Question No. 8, or Question No. 9, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 17

What is a reasonable fee for the necessary services of League City's attorneys in this case, stated in dollars and cents?

Factors to consider in determining a reasonable fee include—

a.	The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

b.	The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

c.	The fee customarily charged in the locality for similar legal services;

d.	The amount involved and the results obtained;

e.	The time limitations imposed by the client or by the circumstances;

f.	The nature and length of the professional relationship with the client;

g.	The experience, reputation, and ability of the lawyer or lawyers performing the services; and

h.	Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Answer in dollars and cents for each of the following:

a.	For representation in the trial court

Answer: $ 770,561.00

b.	For representation through appeal to the court of appeals.

Answer: $ 0

c.      For representation at the petition for review stage in the Supreme Court of Texas.

Answer: $_____ 0 _____

d.      For representation at the merits briefing stage in the Supreme Court of Texas.

Answer: $_____ 0 _____

e.      For representation through oral argument and the completion of proceedings in the Supreme Court of Texas.

Answer: $_____ 0 _____

## QUESTION NO. 18

Did League City fail to give Texas Windstorm Insurance Association prompt written notice of a loss including a description of the property involved for the following structures? Answer "Yes" or "No" for each structure separately. Answer on the chart below.

| STRUCTURE (APPRAISAL ITEM #) | ANSWER "YES" or "NO." |
|---|---|
| Library (#1) | Yes |
| Pool pump bldg (#5) | Yes |
| Park gazebo (#7) | Yes |
| Fuel island canopy (#10) | Yes |
| Open equipment shelter (#11) | Yes |
| Parks Dept. Bldg (#22) | Yes |
| City Hall (#26) | Yes |
| Council Chambers (#28) | Yes |
| Civic Center (#30) | Yes |
| Community Center (#34) | Yes |
| Storage Bldg (#36) | Yes |
| 2d Street Fire Station (#39) | Yes |
| Newport Fire Station (#41) | Yes |
| Vehicle Maintenance (#83) | Yes |

311

| | |
|---|---|
| Building Streets and Drainage/ Traffic Control Department (#84) | Yes |
| Plant Office (#123) | Yes |
| Wisconsin Ave. Control Bldg (#127) | Yes |
| Blower Bldg (#129) | Yes |
| Dewatering Bldg (#131) | Yes |
| Bay Area Blvd. Pump House (#136) | Yes |
| Bay Area Blvd. Controls Bldg (#137) | Yes |
| Chlorine Bldg (#139) | Yes |
| Calder Rd. Pump House (#142) | Yes |
| Walker St. Pump House (#157) | Yes |
| Webster Pump Station (#163) | Yes |
| Museum Office (#175) | Yes |
| Museum Storage Bldg (#176) | Yes |
| Museum Garage (#177) | Yes |
| Hobbs Rd. Fire Station #2 (#179) | Yes |

*If you have answered "yes" to any subpart of the structures in Question No. 18, then for the same structures, and only for such structures, answer the corresponding subpart of the following question. Otherwise, do not answer the following questions.*

## QUESTION NO. 19

Was Texas Windstorm Insurance Association prejudiced by League City's failure, if any, to give prompt written notice of a loss, including a description of the property involved?

An insurer is "prejudiced" if the lack of prompt written notice prevents it from conducting a reasonable investigation of the loss and making a timely payment of any covered loss.

Answer "yes" or "no" to each Structure in the chart below for which you answered "Yes" in response to Question No. _18_.

| STRUCTURE (APPRAISAL ITEM #) | ANSWER "YES" or "NO." |
|---|---|
| | Yes |
| Library (#1) | Yes |
| Pool pump bldg (#5) | Yes |
| Park gazebo (#7) | Yes |
| Fuel island canopy (#10) | Yes |
| Open equipment shelter (#11) | Yes |
| Parks Dept. Bldg (#22) | Yes |
| City Hall (#26) | Yes |
| Council Chambers (#28) | Yes |
| Civic Center (#30) | Yes |
| Community Center (#34) | Yes |
| Storage Bldg (#36) | Yes |

| | |
|---|---|
| 2d Street Fire Station (#39) | Yes |
| Newport Fire Station (#41) | Yes |
| Vehicle Maintenance (#83) | Yes |
| Building Streets and Drainage/ Traffic Control Department (#84) | Yes |
| Plant Office (#123) | Yes |
| Wisconsin Ave. Control Bldg (#127) | Yes |
| Blower Bldg (#129) | Yes |
| Dewatering Bldg (#131) | Yes |
| Bay Area Blvd. Pump House (#136) | Yes |
| Bay Area Blvd. Controls Bldg (#137) | Yes |
| Chlorine Bldg (#139) | Yes |
| Calder Rd. Pump House (#142) | Yes |
| Walker St. Pump House (#157) | Yes |
| Webster Pump Station (#163) | Yes |
| Museum Office (#175) | Yes |

| | |
|---|---|
| Museum Storage Bldg (#176) | Yes |
| Museum Garage (#177) | Yes |
| Hobbs Rd. Fire Station #2 (#179) | Yes |

## QUESTION NO. 20

Did League City fail to keep and provide to Texas Windstorm Insurance Association an accurate record of repair expenses for the following structures? Answer "Yes" or "No" for each structure separately. Answer on the chart below.

| STRUCTURE (APPRAISAL ITEM #) | ANSWER "YES" or "NO." |
|---|---|
| Library (#1) | No |
| Pool pump bldg (#5) | No |
| Park gazebo (#7) | No |
| Fuel island canopy (#10) | Yes |
| Open equipment shelter (#11) | Yes |
| Parks Dept. Bldg (#22) | Yes |
| City Hall (#26) | No |
| Council Chambers (#28) | No |
| Civic Center (#30) | No |
| Community Center (#34) | No |
| Storage Bldg (#36) | Yes |
| 2d Street Fire Station (#39) | Yes |
| Newport Fire Station (#41) | Yes |
| Vehicle Maintenance (#83) | Yes |

| | |
|---|---|
| Building Streets and Drainage/ Traffic Control Department (#84) | Yes |
| Plant Office (#123) | Yes |
| Wisconsin Ave. Control Bldg (#127) | Yes |
| Blower Bldg (#129) | Yes |
| Dewatering Bldg (#131) | Yes |
| Bay Area Blvd. Pump House (#136) | Yes |
| Bay Area Blvd. Controls Bldg (#137) | Yes |
| Chlorine Bldg (#139) | Yes |
| Calder Rd. Pump House (#142) | Yes |
| Walker St. Pump House (#157) | Yes |
| Webster Pump Station (#163) | Yes |
| Museum Office (#175) | Yes |
| Museum Storage Bldg (#176) | Yes |
| Museum Garage (#177) | Yes |
| Hobbs Rd. Fire Station #2 (#179) | No |

*If you have answered "yes" to any subpart of the structures in Question No. 20, then for the same structures, and only for such structures, answer the corresponding subpart of the following question. Otherwise, do not answer the following question.*

## QUESTION NO. 21

Was Texas Windstorm Insurance Association prejudiced by League City's failure, if any, to keep and provide accurate repair receipts to Texas Windstorm Insurance Association?

An insurer is "prejudiced" if the failure to keep and provide accurate repair receipts prevents it from conducting a reasonable investigation of the loss and making a timely payment of any covered loss.

Answer "yes" or "no" to each Structure in the chart below for which you answered "Yes" in response to Question No. 20.

| STRUCTURE (APPRAISAL ITEM #) | ANSWER "YES" or "NO." |
|---|---|
| Library (#1) | — |
| Pool pump bldg (#5) | Yes |
| Park gazebo (#7) | — |
| Fuel island canopy (#10) | Yes |
| Open equipment shelter (#11) | Yes |
| Parks Dept. Bldg (#22) | Yes |
| City Hall (#26) | — |
| Council Chambers (#28) | — |
| Civic Center (#30) | — |
| Community Center (#34) | — |
| Storage Bldg (#36) | Yes |

318

| | |
|---|---|
| 2d Street Fire Station (#39) | Yes |
| Newport Fire Station (#41) | Yes |
| Vehicle Maintenance (#83) | Yes |
| Building Streets and Drainage/ Traffic Control Department (#84) | Yes |
| Plant Office (#123) | Yes |
| Wisconsin Ave. Control Bldg (#127) | Yes |
| Blower Bldg (#129) | Yes |
| Dewatering Bldg (#131) | Yes |
| Bay Area Blvd. Pump House (#136) | Yes |
| Bay Area Blvd. Controls Bldg (#137) | Yes |
| Chlorine Bldg (#139) | Yes |
| Calder Rd. Pump House (#142) | Yes |
| Walker St. Pump House (#157) | Yes |
| Webster Pump Station (#163) | Yes |
| Museum Office (#175) | Yes |

| | |
|---|---|
| Museum Storage Bldg (#176) | Yes |
| Museum Garage (#177) | Yes |
| Hobbs Rd. Fire Station #2 (#179) | |

## QUESTION NO. 22

Does the appraisal award fail to substantially comply with the policy terms and conditions?

"Substantial compliance" means a good faith effort by the appraisers and umpire to follow and apply the terms and conditions of the policy to the covered loss caused by Hurricane Ike.

Answer "Yes" or "No."

Answer: Yes

*If you answered "yes" to Question No. 22, then answer the following question. Otherwise, do not answer the following question.*

## QUESTION 23

Did Texas Windstorm Insurance Association waive any failure of the appraisal award to comply with the terms and conditions of the insurance policy?

"Waiver" is the intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: _____ *No* _____

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

    a. have the complete charge read aloud if it will be helpful to your deliberations;

    b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c. give written questions or comments to the bailiff who will give them to the judge;

    d. write down the answers you agree on;

    e. get the signatures for the verdict certificate; and

    f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2. If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

4. There are some special instructions before Questions *15√/6* explaining how to answer those questions. Please follow the instructions. If all twelve of you answer those questions, you will need to complete a second verdict certificate for those questions.

Do you understand these instructions? If you do not, please tell me now.

_____
JUDGE PRESIDING

# Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____        _____
Signature of Presiding Juror              Printed Name of Presiding Juror

___✓___ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|---|---|
| 1. Jane Blundell | Jane Blundell |
| 2. Alexis Reza | Alexis Reza |
| 3. Florence Burton | Florence Burton |
| 4. Sandra Davis | Sandra Davis |
| 5. Saum | Sarah Saum |
| 6. Brittany Casares | Brittany Casares |
| 7. Stephenie Marabella | Stephenie Marabella |
| 8. Christine Kidwell | Christine Kidwell |
| 9. Ronald King | Ronald King |
| 10. Stephen Werner | STEPHEN WERNER |
| 11. Jennifer Zink | Jennifer Zink |

JOHN D. KINARD
CLERK DISTRICT COURT
FILED
MAY 2 3 2014

GALVESTON COUNTY, TEXAS
BY_____
DEPUTY
325

If you have answered Question No. 15 and 16, then you must sign this certificate also.

## Additional Certificate

I certify that the jury was unanimous in answering Question No. 11 or Question No. 13 and Question No. 15 and Question No. 16. The presiding juror has signed the certificate for all twelve of us.


_____          _____
Signature of Presiding Juror                        Printed Name of Presiding Juror

# Tab B

Order Granting Motion to Adjudge Costs
(CR663)

CAUSE NO. 12-CV-0053

14 OCT 17 AM 10: 48

| | | |
|---|---|---|
| **LEAGUE CITY**<br>Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT<br>GALVESTON CLERK TEXAS |
| **VS.** | §<br>§<br>§ | 10th JUDICIAL DISTRICT |
| **TEXAS WINDSTORM INSURANCE<br>ASSOCIATION**<br>Defendant. | §<br>§<br>§<br>§ | GALVESTON COUNTY, TEXAS |

## ORDER GRANTING MOTION TO ADJUDGE COSTS

The Court considered Defendant Texas Windstorm Insurance Association's Motion to Adjudge Costs. After due consideration of said motion, responses, all pleadings on file and the argument of counsel, the Court is of the opinion that the Motion should be GRANTED.

Accordingly, the Court finds that because Texas Windstorm Insurance Association prevailed at trial, there is good cause to assess taxable costs incurred by Texas Windstorm Insurance Association against Plaintiff League City in the amount of $ 23,189.32.

SIGNED this 16TH day of OCT, 2014.

HONORABLE KERRY NEVES
JUDGE PRESIDING

-5-

663

# Tab C

Final Judgment
(CR664-66)


CAUSE NO. 12CV0053                    14 OCT 17 AM 10: 48

| | | |
|---|---|---|
| **LEAGUE CITY,**<br>Plaintiff, | §<br>§<br>§<br>§ | **IN THE DISTRICT COURT**<br><br>GALVE... ...ERK<br>...TEXAS |
| v. | §<br>§ | **10TH JUDICIAL DISTRICT** |
| **TEXAS WINDSTORM INSURANCE,**<br>**ASSOCIATION,**<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | **GALVESTON COUNTY, TEXAS** |

## FINAL JUDGMENT

On April 30, 2014, this cause proceeded to trial. Plaintiff League City and Defendant Texas Windstorm Insurance Association appeared through their representatives and through their attorneys of record.

All parties announced ready for trial. The Court impaneled and swore the jury, which heard the evidence and arguments of counsel. The Court submitted questions, definitions, and instructions to the jury.

On May 23, 2014, the jury returned its verdict. The Court received and accepted the jury's verdict. The questions submitted to and answered by the jury and the jury's findings are incorporated for all purposes in this judgment by reference as if fully set forth herein.

Defendant Texas Windstorm Insurance Association filed its Motion to Disregard Jury Findings, For Judgment Notwithstanding the Verdict and For Entry of Judgment and cited in support thereof the jury's answers to Questions 2, 4(a, b, d, e, f), 6(a, b, d, e,), 7, 8, 9, 13, 18, 19, 20, 21, 22, and 23 and asked the trial court to disregard the jury's answers to Questions 1, 3, 4(c), 5, 6(c, f), 11, 12, and 17. The Court considered the Motion, response, reply and argument of

-1-

counsel, ~~grants the Motion~~ *KLN* and renders judgment that League City take nothing against Texas Windstorm Insurance Association on all claims.

In conformity with the jury's verdict, it is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff League City take nothing against Defendant Texas Windstorm Insurance Association. It is further

ORDERED, ADJUDGED, and DECREED that all costs of court are taxed against Plaintiff League City in the sum of $ **39,901.95**.

~~All relief not expressly granted herein is denied.  This judgment finally disposes of all~~ parties and all claims and is appealable.

Signed the **16TH** day of **OCT,** 2014.

_____
HONORABLE KERRY NEVES,
PRESIDING JUDGE

-2-

Approved as to form:

BRACEWELL & GIULIANI LLP

By: _Dale Wainright_
Dale Wainwright
State Bar No. 00000049
dale.wainwright@bgllp.com
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Facsimile: (800) 404-3970

By: _Andrew McKinney by permission_
Andrew T. McKinney IV
State Bar No. 13716800
mckinney@litchfieldcavo.com
LITCHFIELD CAVO LLP
One Riverway, Suite 1000
Houston, Texas 77056
Telephone: (713) 418-2000

James R. Old, Jr.
State Bar No. 15242500
jay@jroldlaw.com
JAY OLD & ASSOCIATES, PLLC
3560 Delaware, Suite 308
Beaumont, Texas 77706
Telephone: (409) 241-7252

David P. Salyer
State Bar No. 17549680
dpsalyer@mapalaw.com
MCLEOD, ALEXANDER, POWELL &
APFFEL, P.C.
802 Rosenberg, P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481

ATTORNEYS FOR DEFENDANT TEXAS
WINDSTORM INSURANCE ASSOCIATION

#4643350.3

-3-

666

# Tab D
Amended Final Judgment
(CR678-80)

CAUSE NO. 12CV0053

| | | |
|---|---|---|
| LEAGUE CITY,<br>Plaintiff, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| v. | § | 10TH JUDICIAL DISTRICT |
| | § | |
| TEXAS WINDSTORM INSURANCE,<br>ASSOCIATION,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§ | GALVESTON COUNTY, TEXAS |

## AMENDED FINAL JUDGMENT

On April 30, 2014, this cause proceeded to trial. Plaintiff League City and Defendant Texas Windstorm Insurance Association appeared through their representatives and through their attorneys of record.

All parties announced ready for trial. The Court impaneled and swore the jury, which heard the evidence and arguments of counsel. The Court submitted questions, definitions, and instructions to the jury.

On May 23, 2014, the jury returned its verdict. The Court received and accepted the jury's verdict. The questions submitted to and answered by the jury and the jury's findings are incorporated for all purposes in this judgment by reference as if fully set forth herein.

Defendant Texas Windstorm Insurance Association filed its Motion to Disregard Jury Findings, For Judgment Notwithstanding the Verdict and For Entry of Judgment and cited in support thereof the jury's answers to Questions 2, 4(a, b, d, e, f), 6(a, b, d, e,), 7, 8, 9, 13, 18, 19, 20, 21, 22, and 23 and asked the trial court to disregard the jury's answers to Questions 1, 3, 4(c), 5, 6(c, f), 11, 12, and 17. The Court considered the Motion, response, reply and argument of

-1-

678

counsel, and renders judgment that League City take nothing against Texas Windstorm Insurance Association on all claims.

In conformity with the jury's verdict, it is therefore ORDERED, ADJUDGED, and DECREED that Plaintiff League City take nothing against Defendant Texas Windstorm Insurance Association. It is further

ORDERED, ADJUDGED, and DECREED that costs of court are taxed against Plaintiff League City in the sum of $23,187.32.

All relief not expressly granted herein is denied. This judgment finally disposes of all parties and all claims and is appealable.

Signed the 13TH day of NOV. 2014.

HONORABLE KERRY NEVES,
PRESIDING JUDGE

Approved as to form:

**BRACEWELL & GIULIANI LLP**

By: /s/ Dale Wainwright
Dale Wainwright
State Bar No. 00000049
dale.wainwright@bgllp.com
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Facsimile: (800) 404-3970

By: /s/ Andrew T. McKinney IV
Andrew T. McKinney IV
State Bar No. 13716800
mckinney@litchfieldcavo.com
**LITCHFIELD CAVO LLP**
One Riverway, Suite 1000
Houston, Texas 77056
Telephone: (713) 418-2000

James R. Old, Jr.
State Bar No. 15242500
jay@jroldlaw.com
**JAY OLD & ASSOCIATES, PLLC**
3560 Delaware, Suite 308
Beaumont, Texas 77706
Telephone: (409) 241-7252

David P. Salyer
State Bar No. 17549680
dpsalyer@mapalaw.com
**MCLEOD, ALEXANDER, POWELL &
APFFEL, P.C.**
802 Rosenberg, P.O. Box 629
Galveston, Texas 77553
Telephone: (409) 763-2481

**ATTORNEYS FOR DEFENDANT
TEXAS WINDSTORM INSURANCE ASSOCIATION**

680

# Tab E

Amended Order Denying Plaintiff's
Motion to Disregard Certain Jury Findings and
Render Judgment on the Remaining Findings
(CR856)

12 – CV – 0053
DCAMOR
Amended Order
982073

CAUSE NO. 12-CV-0053

| | | |
|---|---|---|
| LEAGUE CITY<br>Plaintiff, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§<br>§ | 10th JUDICIAL DISTRICT |
| TEXAS WINDSTORM INSURANCE<br>ASSOCIATION<br>Defendant. | §<br>§<br>§<br>§<br>§ | GALVESTON COUNTY, TEXAS |

**AMENDED ORDER DENYING PLAINTIFF'S MOTION TO DISREGARD CERTAIN JURY FINDINGS AND RENDER JUDGMENT ON THE REMAINING FINDINGS**

At a hearing on the 20th day of January, 2015, after proper notice to all parties, the Court considered Plaintiff League City's Motion to Disregard Certain Jury Findings and Render Judgment, Defendant's Response, argument of counsel and the evidence, and determined that Plaintiff's Motion should be DENIED. It is accordingly,

ORDERED that League City's Motion to Disregard Certain Jury Findings and Render Judgment on the Remaining Findings is DENIED.

Signed this **23d** day of **JAN.**, 2015.

HON. KERRY NEVES
JUDGE PRESIDING

856

# Tab F

Amended Order Denying Plaintiff's Motion for New Trial
(CR857)

12-CV-0053
DCAMOR
Amended Order
982091

CAUSE NO. 12-CV-0053

15 JAN 23 AM 10: 36

| | | |
|---|---|---|
| LEAGUE CITY<br>Plaintiff, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | § | 10th JUDICIAL DISTRICT |
| | §<br>§ | |
| TEXAS WINDSTORM INSURANCE<br>ASSOCIATION<br>Defendant. | §<br>§<br>§<br>§ | GALVESTON COUNTY, TEXAS |

## AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

At a hearing on January 20, 2015, after proper notice to all parties, the Court considered

Plaintiff League City's Motion for New Trial and Defendant's Response, argument of counsel

and the evidence, and determined that Plaintiff's Motion should be DENIED. It is accordingly,

ORDERED that League City's Motion for New Trial is DENIED

Signed this 23d day of JAN., 2015.

HON. KERRY NEVES
JUDGE PRESIDING

857